GEORGE WASHER, Appellant, *v.* WARREN J. SLATER, Respondent.

*False imprisonment — the commitment of an alleged insane person to an asylum upon the petition of his son-in-law is not authorized — what physicians' certificate does not show insanity.*

In an action to recover damages for false imprisonment it appeared that the defendant, who was a son-in-law of the plaintiff, instituted a proceeding to have the plaintiff confined in an insane asylum, based upon his own verified petition and a certificate of lunacy made by two medical examiners upon the blank form furnished by the State Commissioner in Lunacy pursuant to the statute; that in the printed portion of the blank the examiners certified that the plaintiff was insane and a proper subject for custody and treatment in some institution for the insane, but in a subjoined statement of their observations of the plaintiff's conduct they certified: " *We are inclined to call him ' devilish' instead of insane.*"

On the petition and the accompanying certificate the county judge, without personal service upon, or notice to, the plaintiff, committed him to an insane asylum, and on the following day made a certificate that he had dispensed with personal service upon the plaintiff for the reason "that patient would not comprehend motive of the proceeding."

*Held,* that the order of commitment constituted no protection to the defendant, as the petition and the certificate did not confer jurisdiction on the county judge for the reason that under section 62 of the Insanity Law (Laws of 1896, chap. 545) a son-in law of an alleged insane person has no authority to make an application for his commitment to an insane asylum, and also because the certificate of the medical examiners accompanying the petition did not show that the plaintiff was insane as required by section 61 of the statute.

HOUGHTON, J., dissented.

APPEAL by the plaintiff, George Washer, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Franklin on the 18th day of April, 1901, upon the dismissal of the complaint by direction of the court after a trial at the Franklin Trial Term, and also from an order entered in said clerk's office on the 6th day of April, 1901, denying the plaintiff's motion for a new trial made upon the minutes.

*Badger & Cantwell,* for the appellant.

*Frederick G. Paddock,* for the respondent.

EDWARDS, J.:

This action was brought to recover damages for the false imprisonment of the plaintiff by the defendant in the insane asylum at Ogdensburg, N. Y.

The complaint sets forth the petition and certificate of the two medical examiners presented to the county judge of Franklin county on the application of the defendant to have the plaintiff adjudged to be insane and to be committed to an asylum, and alleges that they were insufficient to confer jurisdiction on the county judge to make the order of commitment.

The answer avers that all the proceedings under the application of the defendant to the county judge were regular and legal.

At the close of the plaintiff's case the court dismissed the complaint on the ground that the county judge had jurisdiction to make the order of commitment.

The facts as disclosed on the trial are that the application to the county judge was made by the defendant, whose verified petition sets forth that he is a son-in-law of the plaintiff, and that the facts upon which the application is based are "Several irrational acts, such as trying to obtain the arrest of parties for fictitious crimes & leaving his home & going to hotel to board without any cause therefor & try to have his wife who is perfectly sane kept under lock & key & also by making himself a general nuisance in the community." This petition was accompanied by a certificate of lunacy made by two medical examiners upon the blank form furnished by the State Commission in Lunacy pursuant to the statute, the printed portion of which reads that the examiners " being severally and duly sworn, do severally certify and each for himself certifies, with the exceptions which are hereinafter noted, as follows:  *  *  *
2. I have with care and diligence personally observed and examined on the date of this certificate, namely, on the        day of
:     , now residing or being at        in the county of        , and as a result of such joint examination find, and hereby certify to the fact, that he is insane and a proper subject for custody and treatment in some institution for the insane, as an insane person under the provisions of the statute.  (The blank spaces for date, name and residence were filled in by the examiners, 30th day of April, 1900, George Washer, Saranac Lake, Franklin.)

"3. I have formed the above opinion upon the subjoined facts: a. Facts indicating insanity personally observed by me, as follows: The patient said."

The blank lines here left in the certificate are filled in by the two medical examiners, with the following statement: "That his wife, daughter & son-in-law had forged a deed of some property & that he was going to send them to State prison & he also said many other strange things about his family. On other subjects he seemed sane enough, but we find that always there has been friction between husband & wife & the present trouble seems to grow out of the * * * fact that the husband a year ago tried to sell a house & was prevented by the family which so angered him that since that time he has done everything he could think of to annoy them. But considering all the facts in the case & his age & disposition (which is a very bad one) *we are inclined to call him ' devilish' instead of insane* — He has been most peculiar for 20 years & has done many things which might be called insane, but we are inclined to think that his present condition is the result of his great hatred for his family — his wife is now at his daughter's & *the old man is living alone & seems to enjoy himself & seems* * * * *quiet & harmless.*" On this certificate and accompanying petition the county judge of Franklin county on May 3, 1900, made an order of commitment of the plaintiff to the St. Lawrence State Hospital, an institution for the custody and treatment of the insane. On the following day the plaintiff was received in the State hospital at Ogdensburg, and on that day the county judge made a certificate that he had dispensed with personal service on the plaintiff, the alleged insane person, for the reason, as stated in the certificate, "that patient would not comprehend motive of the proceeding." The plaintiff remained in the hospital nineteen days. The assistant physician at the hospital testified that he did not at any time during the plaintiff's stay there observe any indications of insanity in his appearance, manner or condition.

The proceeding whereby the plaintiff was restrained of his liberty may be briefly summarized as follows: A son-in-law, with whom the plaintiff did not reside, on his petition, accompanied by a certificate of two medical examiners, whose sworn statement shows that they did not believe the plaintiff to be insane, but "devilish" only, made application to the county judge, and thereupon, without

any personal service upon, or notice to, the plaintiff, the county judge made an order committing him to an insane asylum, and the following day made a certificate that he had dispensed with personal service because the plaintiff "would not comprehend *motive* of the proceeding."

Comment or criticism on this proceeding is quite unnecessary. The only question for our determination is whether the county judge acquired jurisdiction to make the commitment. The authority of a county judge to make an order for the commitment of a person in an institution for the custody and treatment of the insane is derived from the statute (Laws of 1896, chap. 545). Section 60 of that statute provides that "A person alleged to be insane, and who is not in confinement on a criminal charge, may be committed to and confined in an institution for the custody and treatment of the insane, upon an order made by a judge of a court of record of the city or county, or a justice of the Supreme Court of the judicial district in which the alleged insane person resides or may be, adjudging such person to be insane, upon a certificate of lunacy made by two qualified medical examiners in lunacy, accompanied by a verified petition therefor, or upon such certificate and petition, and after a hearing to determine such question, as provided in this article." Section 61 provides that "*The certificate of lunacy must show that such person is insane* and must be made by two reputable physicians, * * * *and show that the condition of the person examined is such as to require care and treatment in an institution for the care, custody and treatment of the insane.*" Section 62 designates the person by whom, and provides the manner in which the application shall be made, as follows: "Any person with whom an alleged insane person may reside, or at whose house he may be, or the father or mother, husband or wife, brother or sister, or the child of any such person, and any overseer of the poor of the town, and superintendent of the poor of the county in which any such person may be, may apply for such order, by presenting a verified petition containing a statement of the facts upon which the allegation of insanity is based, and because of which the application for the order is made. Such petition shall be accompanied by the certificate of lunacy of the medical examiners, as prescribed in the preceding section."

Here the application was not made by the overseer of the poor of the town, or the superintendent of the poor of the county, or by a person with whom the plaintiff resided, or at whose house he was, or by any relative specified in that section, but was made by the son-in-law, who was not, within the legal meaning, a " child " of the plaintiff and had no more authority to make the petition than a stranger, and the certificate of the medical examiners accompanying such application did not show that the plaintiff was insane as required by the statute, but rather to the contrary.

I think it quite clear that the petition and the certificate did not confer any jurisdiction upon the county judge to make the order of commitment, and his adjudication was no protection to this defendant who instituted the proceedings. For this reason the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

PARKER, P. J., SMITH and CHASE, JJ., concurred; HOUGHTON, J., dissented.

Judgment reversed on the law and facts and new trial granted, with costs to appellant to abide event.