[Civ. No. 3549. Third Appellate District.—August 22, 1928.]

LUCILE McALMOND, etc., Appellant, v. A. A. TRIPPEL, et al., Defendants; EDNA MAHAN, Respondent.

Frank C. Scherrer and Chas. R. McCarty for Appellant.

Everett W. Mattoon, County Counsel, and R. C. McAllaster, Deputy County Counsel, for Respondent.

WEYAND, J., *pro tem.*—This appeal is taken from a judgment of the superior court of the county of Los Angeles, made and entered against the plaintiff upon her refusal to amend her complaint, in an action for false imprisonment and malicious arrest.

The complaint avers that the defendant Trippel was city attorney of Huntington Park, a city within Los Angeles County, defendant Leland was city marshal of said city, and the Bonding Company above named was the surety on his official bond, and the defendant Edna Mahan was the superintendent of Juvenile Hall, an institution in the city of Los Angeles, operated by the county of Los Angeles as a place for the detention of persons under the age of twenty-one years.

The vital portion of the complaint of plaintiff is in words as follows:

"That on the 1st day of July, 1925, the defendants A. A. Trippel, Harry E. Leland, Edna Mahan, John One, John Two, Jane One and Jane Two maliciously, wrongfully, unlawfully, and without process or commitment or legal authority of any kind whatsoever, and with the intent to oppress the plaintiff Lucile McAlmond, arrested and imprisoned the said plaintiff in said Juvenile Hall, and continued to and did wrongfully and unlawfully and maliciously confine said Lucile McAlmond in said Juvenile Hall until the hour of approximately one o'clock, P. M. on July 4th, 1925; that by reason of being confined in said Juvenile Hall, the plaintiff Lucile McAlmond during said period of confinement was forced to associate and come in contact with prostitutes and persons of immoral and ill repute, and who were degenerate; that at all times herein mentioned Robert Black was and still is an attorney at law, duly admitted to practice before all the courts of the state of California; that during said confinement, to-wit, on July 2nd, 1925, plaintiff engaged the services of said Robert Black to represent her in the matter in which she was being held in confinement, and that said Robert Black on said day presented himself at said Juvenile Hall, and stated to the defendants and in particular to the defendant Edna Mahan, that he was the attorney and had been engaged as the attorney to represent said Lucile McAlmond; that said Edna Mahan then and thereupon refused to permit and in fact prevented Lucile McAlmond from

conversing with her said attorney or consulting her said attorney, and denied to plaintiff the right of counsel during all of said period of confinement. That said arrest and confinement became a matter of common notoriety among friends and acquaintances of plaintiff Lucile McAlmond, and the general public, and by reason thereof plaintiff Lucile McAlmond suffered great humiliation; that by reason of the aforesaid wrongful imprisonment and arrest, plaintiff Lucile McAlmond suffered great physical pain, and grievious mental anguish, and always will continue so to suffer, to her damage in the sum of $25,000.00, and that all thereof was caused by the aforesaid wrongful and malicious arrest and actions on the part of the defendants.''

The demurrer of the defendant Edna Mahan consisted of a general demurrer, and two special assignments; one of ambiguity and one of uncertainty. The language of both special assignments are the same, and is as follows:

''Said allegation does not show what part said defendant, Edna Mahan, is alleged to have taken in said alleged false imprisonment, and that it does not appear whether plaintiff intends to allege that all of the defendants named acted in concert or what the individual and several defendants are alleged to have done with reference to said alleged false imprisonment, and that such facts cannot be ascertained from said allegation, nor from any other allegation in said complaint.''

It appears from the order made at the hearing of the demurrer, that defendant Edna Mahan also had before the court a motion to strike out parts of the complaint. Whatever may have been the real merits of this motion is not now important, as the record discloses that this motion was ordered off the calendar. The demurrer was sustained, with leave to amend within the usual time. Plaintiff refused to amend and the judgment appealed from was entered.

Taking up the special assignments, they present the question as to the necessity of alleging whether or not the named defendants acted in concert, or to allege the particular part each defendant did perform with reference to said false imprisonment.

In the early case of *Dreux* v. *Lomec et al.*, 18 Cal. 83, it was held, ''The complaint states the joint liability of defendant by averments general to the three defendants, and

there can be a joinder of several defendants in an action for a malicious prosecution. (1 Chitty's Pleading, 135.) It was unnecessary to aver and prove a conspiracy. . . . If two persons can jointly engage in a malicious prosecution, they can be sued for the act itself and not for a conspiracy to commit the act." There can be no essential difference between the action for malicious prosecution and the action for false imprisonment in this respect.

In the case at bar the allegation is to the effect that the three defendants Trippel, Leland, and Mahan, "Without legal authority of any kind whatsoever . . . arrested and imprisoned the said plaintiff."

In *Culver* v. *Burnside et al.*, 43 S. D. 398 [179 N. W. 490], it is said:

"The first contention of appellants is that the acts alleged are such as could not be committed jointly. We are of the opinion that this contention is not tenable. We are of the view that all who take part in or assist or abet in the commission of false imprisonment are joint tort-feasors, without an allegation or proof of a conspiracy. 1 Cooley on Torts (3d ed.), p. 319.

" . . . We are of the view that a complaint which states, in substance, that the defendants, at a specified time and place, unlawfully and maliciously detained plaintiff and restrained him of his liberty for the space of one hour without any right or authority so to do, and against his will, states a cause of action which is not subject to general demurrer. The action for false imprisonment is frequently alleged to have been committed by reason of some wrongful arrest under some pretended or void order of some court, in which class of false imprisonment cases it is incumbent on the plaintiff to allege facts showing or tending to show that such arrest, under such court procedure, was wrongful, unauthorized, and without any probable cause; but in a cause of action alleged as the one at bar there may have been no court procedure at all, and under such a complaint it is incumbent on the defendants, if they acted under lawful court procedure, to affirmatively allege and prove such facts as justification. Evidence of such a defense could not be admitted under a general denial. *Neves* v. *Costa,* 5 Cal. App. 111 [89 Pac. 860]."

In the instant case the complaint specifically avers that the arrest was made without process or commitment.

In Corpus Juris, volume 25, page 531, it is said:

"In an action against joint defendants it is unnecessary to allege that the acts of defendants were 'wilful and concerted,' etc., since it is not necessary to make out a conspiracy to maintain an action for false imprisonment. An allegation that a false imprisonment was committed by defendants in person may be supported by evidence that the acts were done by their agents."

We are of the opinion that it was unnecessary for plaintiff to allege a conspiracy to arrest the plaintiff, or to allege the definite part each defendant performed.

The ruling of the lower court is defended by respondent on the ground, that admitting that the complaint was otherwise good, yet, because the alleged detention was in a juvenile detention home, the restraint did not amount to "imprisonment." With this contention we are unable to agree. It is true that the detention homes established under the Juvenile Court Law are largely in the nature of shelters for abandoned and mistreated children. Nevertheless, the law in question lays down the procedure by which children may be placed therein. To initiate proceedings under the act in question it is provided in section 3 (Juvenile Court Law) that a verified petition shall first be filed. By subsequent sections it is further provided that a citation shall be issued to cause the child to be brought before the court. There must be a summary hearing in court. That until final disposition of the case the person to be investigated may be held upon order of the court in some suitable place *as the court may direct*. Nowhere is there vested in any person any right whatsoever to take possession of and confine any person in any sort of detention home, except upon an order of the judge of the juvenile court.

Defendants may have acted for the best interests of said child, and may have done no damage to her by reason of her detention, or said officers may have even conferred upon her a favor and a benefit, yet these are all matters of defense as against the amount of damage claimed, or as answering the allegation of oppression. Any detention under pretended color of official right is imprisonment. Even a detention of a person outside of a public institution,

against his will and without right, amounts to false imprisonment.

We can but conclude that the complaint stated a cause of action, and that to sustain the demurrer thereto was improper in the present case.

Respondent directs our attention to the case of *Webber* **v.** *Doust et al.,* 84 Wash. 330 [146 Pac. 623], and contends that under the authority of that case there can be no false imprisonment when the detention was had under the juvenile court laws, and by juvenile court officers. That case was upon appeal to the supreme court of Washington after a trial on the merits in the lower court, and in which trial there was a judgment against the defendants. We think a careful reading of that case will disclose a quite different situation than the one here complained of. In the instant case the allegation is that the defendants "maliciously, wrongfully, unlawfully and without process or commitment or legal authority of any kind whatsoever, and with the intent to oppress the plaintiff, . . . arrested and imprisoned the said plaintiff." It is here further alleged that these defendants kept her three days, not permitting her attorney to visit or consult her. Also, the present complaint contains the statement that during the said confinement plaintiff was forced to associate and come in contact with various types of degraded people.

Even had the defendant officers the right to take plaintiff into custody, they could not have warrant to do so "without any legal authority," and with intent to "oppress," nor would they have a right to compel an association with the unfit. From the case just mentioned we quote as follows:

"If an officer abuses his authority, he is a trespasser *ab initio,* and liable for false imprisonment. 1 Cooley on Torts (3d ed.), p. 314. In other words, an officer, acting as such, stands in the same relation to the infant as would a guardian appointed by, and acting under, the due process of a court having jurisdiction to appoint guardians. The only question to occur is whether the officer has acted in furtherance of the law, in good faith, and has done that which he believed to be for the best interests of the child, bringing no wilful harm to it, and being actuated by no ulterior purpose. 1 Cooley on Torts (3d ed.), p. 356."

The judgment of the lower court is reversed, with instructions to the lower court to overrule said demurrer, and permit the defendant Edna Mahan to answer if she desires so to do.

Hart, J., and Finch, P. J., concurred.