Commonwealth *v.* Bausewine, Appellant.

536

Argued October 26, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Thomas D. McBride,* with him *Edward B. Duffy,* for appellant.

*Frederick B. Smillie,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., January 25, 1945:

On March 29, 1944, information was lodged charging George Bausewine, chief of police of the borough of Norristown, with bribery and non-feasance in office. The same day notice was served on the district attorney by the defendant waiving a hearing and also presentment to the grand jury. In compliance with defendant's request and in pursuance of the Act of June 15, 1939, P. L. 400, 19 P. S. §241, eight district attorney bills were prepared and submitted to his counsel, who made some suggestions for changes in the wording of the bills, which were adopted. On April 3, 1944, the date of the trial, the defendant filed a formal waiver of indictment. Before the case reached the jury six of the bills had been withdrawn from its consideration. The defendant was convicted of bribery and non-feasance in office on the remaining two bills, to wit No. 95 February Term, 1944 and No. 95-5 February Term, 1944, respectively.

We will first give consideration to the appellant's contention that the evidence was insufficient as a matter of law to support his conviction and that the verdict was clearly against the weight of the evidence. This requires a review in some detail of the testimony. The Fraternal Order of Orioles, hereinafter referred to as Orioles, maintained a clubhouse in Norristown in which were operated eight illegal slot machines for at least a period of two years, which included 1943 and a part of 1944. The profits from these machines to the Orioles were shown to have averaged $2,750 a month.

Vincent U. McCafferty, called by the commonwealth, testified that in 1942 a man by the name of Kriebel was the chief steward and that he, assistant steward, drove him to Bausewine's home in 1942. Kriebel having died in January 1943, McCafferty "carried out just as he did." Every month from January 1943 up to and including January 1944 he put $50 in cash in an envelope and delivered it to Bausewine.

There appears in the minutes of the house committee of the Orioles as of February 7, 1944, the following: "Agreed that as this club is operated in a strictly legitimate manner, no money to be paid anyone as so-called protection money." There was no proof that any money was paid Bausewine during the month of February. McCafferty said that on March 10, 1944, he received a telephone call about 6 o'clock from the defendant asking him how he was and where he had been. He answered: "Seven o'clock tonight." The defendant replied: "Okay." Shortly after seven that evening John Gilinger, chairman of the house committee of the Orioles in his car drove the witness to Bausewine's home. McCafferty had in his possession the envelope containing $50, which he had previously shown Gilinger. Arriving in front of the Bausewine house he proceeded up the walk and as he was on the porch, Bausewine, who had been sitting at the window, opened the door and received the money. McCafferty was asked with whom he had a conversation as a result of which he made this payment to Bausewine. He replied Mr. Morrow, the president of the Orioles. Gilinger corroborated this testimony relating to the visit to the defendant's house and the delivery to him of the envelope containing the money.

The credibility of McCafferty was vigorously attacked. He had originally stated on March 16, 1944, that the final payment of $50 was made to Bausewine on the evening of March 14, 1944, and subscribed to a written statement to that effect in the office of the district attorney, although he did not appear very positive as to the date. Accordingly the information and the bills of indictment originally alleged March 14 as the date of the last payment. It became apparent subsequently to the district attorney that March 14 could not have been the date on which McCafferty made the final payment as beyond question between 5:00 and 9:00 P. M. on

that day the defendant was continuously in a meeting of the Commercial Club, where there were present many prominent citizens of Norristown. The district attorney again interviewed McCafferty in an effort to learn the correct date of this alleged last payment. McCafferty then acknowledged his error and fixed the date as March 10, 1944, explaining that when he made his first statement he was confused, nervous and excited due to the unusual experience of appearing in the district attorney's office, where there were detectives and police present. He explained that he recalled the correct date after talking to his brother Joseph, to whom he had loaned his car on the date the payment was made. That was the reason given for using the Gilinger car. Joseph McCafferty was called and corroborated his brother's testimony as to borrowing his car on March 10.

Bausewine's defense was that he did not know McCafferty and he denied that he ever received any money from him, although he did not specifically deny the telephone conversation to which we have referred. A further defense was that of an alibi. He introduced testimony that between 3:00 and 9:00 P. M. of the evening in question he was several miles away from his home taking a ride with a friend named Lewis; that in the course of this trip they made stops at two different hotels. The proprietors of these hotels, friends of Bausewine, and Lewis were called as witnesses to support his alibi defense.

The defendant claims further that his arrest was the result of a frameup; that Gilinger, chairman of the house committee of the Orioles, was a brother-in-law of Captain Butler of the Norristown police force, against whom he had made formal charges of falsifying his alleged resignation from the state police and accepting a bribe while a member of that organization and that it was he in retaliation who was the instigator of this prosecution.

It is true that some of the commonwealth's testimony was circumstantial. Chief Justice MAXEY in an opinion in *Commonwealth v. De Petro et al.*, 350 Pa. 567, 39 A. 2d 838, interestingly discusses the test to be applied in passing upon the probative value of circumstantial evidence. That opinion cited with approval *Commonwealth v. Skwortzo*, 113 Pa. Superior Ct. 345, 173 A. 480, where it was stated p. 348, that if the substance of the testimony is not "so weak and inconclusive that as a matter of law no probability can be drawn from the combined circumstances" then it will support a verdict of guilty.

This question naturally arises: What prompted the extraordinary minute of the house committee? It will not require an inordinately suspicious mind to conclude that there was some basis for its passage. It is a reasonable inference that the Orioles subsequently concluded for reasons that were persuasive, to continue the monthly payments notwithstanding the minute of the house committee. Under the evidence adduced the trial judge would have committed clear error if he had withdrawn this case from the jury's consideration, as there were controversial questions of fact for their consideration. If they believed, as they apparently did, that these payments were made and were for the purpose alleged, the verdict was warranted. We have no difficulty in concluding that the evidence was sufficient to support the conviction.

Nor can we say that the verdict was so clearly against the weight of the evidence as to convict the trial judge of abuse of discretion in not granting a new trial. He had the benefit of seeing and hearing the witnesses and expressed the opinion that the verdict was not so shocking to his conscience as to warrant the granting of a new trial, as "a very fair minded" jury heard the case. The granting or refusal of a new trial in criminal, as well as civil, cases on the ground that the verdict is against the weight of the evidence, is a matter largely

within the sound discretion of the trial judge: *Commonwealth v. Croce,* 89 Pa. Superior Ct. 249, 250, 251; *Commonwealth v. Samson,* 130 Pa. Superior Ct. 65, 76, 196 A. 564.

The appellant's next contention is that the Chief of Police of Norristown is an officer of the commonwealth within the meaning of the statute defining bribery and that under the well recognized rule where a crime is punishable by statute a defendant cannot be proceeded against at common law: §1104 of 1939 Criminal Code, supra, 18 PS §5104; *Commonwealth v. Clark,* 123 Pa. Superior Ct. 277, 294, 187 A. 237; *Commonwealth v. Peoples et al.,* 345 Pa. 576, 579, 28 A. 2d 792. The defendant was charged with bribery at common law and also under the statute. The defense contends, and we think correctly, that the commonwealth at the trial relied upon the common law charge. True, the defendant raised no objection at the trial that the offense came within the 1939 statute, supra, and that therefore there could be no conviction of common law bribery. It was not too late, however, to raise this question in arrest of judgment; *Commonwealth ex rel Mees v. Mathieu II,* 107 Pa. Superior Ct. 261, 265, 163 A. 109.

We will turn now to consider section 303 of the Criminal Code of 1939, supra, 18 PS §4303, to determine whether defendant comes within its terms. It provides as follows: "Whoever shall directly or indirectly ...... give or make any ...... payment ...... of any money, goods, or other thing, in order to obtain or influence the vote, opinion, verdict, award, judgment, decree, or behavior of any member of the General Assembly, or *any officer of this Commonwealth,* judge, juror, justice, referee or arbitrator, in any bill, action, suit, complaint, indictment, controversy, matter or thing whatsoever, depending or which shall depend before him or them, is guilty of bribery, a misdemeanor ......" (Italics supplied.)

Is the chief of police of Norristown an officer of this commonwealth? Section 1125 of the General Borough Act of May 4, 1927, P. L. 519, Article XI, as amended June 24, 1939, P. L. 689, 53 PS §13201, provides that borough councils may appoint, pay and remove the chief of police and that the burgess of the borough shall have full charge and control of this officer. He is an officer of a borough within the commonwealth, but not an official of the Commonwealth of Pennsylvania. An analysis of the language in this statute confirms that view. Section 303, supra, relates to a thing to be attained or influenced by a bribe. "Vote, opinion, verdict, award, judgment, decree or behavior" are specified. A chief of police has no official relation with any of those matters. Those who come within the provisions of that section are legislators, judges, jurors, etc., who make up the legislative and judicial branches of our government. They are the officers of the commonwealth within the purview of the statute. Nothing is said in this section about municipal officers. Then we go further and examine sections 304 and 305, 18 PS §§4304, 4305, dealing with corrupt solicitation and the practice of corrupt solicitation of "municipal officers" and "public officers of the State or of any political subdivision thereof." If the legislature had meant to embrace within section 303 municipal officers, it would have said so definitely as it did in sections 304 and 305. An officer of the commonwealth is generally, if not always, regarded as a public officer, but those who occupy a subordinate position in a municipality, such as policemen, firemen, etc., who are employed and paid by the municipality, do not have a definite term of office, and whose duties are discharged primarily in connection with municipal affairs, even though they are in a sense in the public service, cannot properly be considered as public officers or officers of the commonwealth. Nor are they regarded as public officers within the constitutional provision of Article 6 of section 4. "Where, how-

ever, the officer exercises important public duties and has delegated to him some of the functions of government and his office is for a fixed term and the powers, duties and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a public officer." *Richie v. Philadelphia*, 225 Pa. 511, 516, 74 A. 430. See, also, *Finley v. McNair et al.*, 317 Pa. 278, 281, 176 A. 10.

*Houseman v. Commonwealth*, 100 Pa. 222, cited by the appellant is not in conflict with our conclusion that this defendant was not an officer of the commonwealth. That case involved the construction of section 4, article 6 of the Constitution and involved the right to remove a collector of delinquent taxes in the city of Philadelphia, prior to the expiration of the term of his appointment. It was held there that the receiver of delinquent taxes in Philadelphia *is* a public officer as a considerable part of the money collected, amounting to a very large sum, is payable to the commonwealth, which indicates the public character of his official position.

Some of the cases cited by the appellant involves members of the state police. This defendant cannot be compared to a superintendent of the state police, or to a member of that force. They are officers of the commonwealth appointed and subject to removal by state officials and paid out of state funds.

In *Commonwealth v. Norris*, 87 Pa. Superior Ct. 61, the defendant was a chief of police of the borough of Emporium and was indicted, charged with extortion under section 12 of the Criminal Code of 1860, P. L. 382, 18 PS §281. That act is limited to certain clerks, prothonotaries, etc., "or other officer of this commonwealth." The defendant was found guilty of extortion as "an officer of this Commonwealth." An appeal was taken to this court and we held that while the defendant could not be convicted under section 12 because he was not such an officer as comes within the provisions, it

does not follow that he could not be convicted of extortion at common law. See, also, *Commonwealth v. Ruff,* 92 Pa. Superior Ct. 530, 536. If the chief of police of a borough could not be convicted of extortion under that statute, he does not by the same reasoning, come within the statute making the acceptance of a bribe an offense. True, bribery and extortion are different offenses, but they are very closely allied: *Commonwealth v. Wilson,* 30 Pa. Superior Ct. 26, 31. We think the reasoning in the *Norris* case is applicable to the one in hand. Our study of the Act of 1939, supra, which as a penal statute must be construed strictly, brings us to the conclusion that the defendant is not an officer of the commonwealth and within its purview. But a conviction had under the common law is sustainable: *Commonwealth of Pa. v. Benedict et al.,* 114 Pa. Superior Ct. 183, 173 A. 750.

The appellant further asserts that the conviction under bill No. 95-5 is invalid. This bill is endorsed on the. back "Obstructing Justice and the Administration of Government" and charged that defendant "...... being then and there chief of police of the Borough of Norristown, and by virtue of such office being then and there charged with a public duty to uphold, maintain and enforce the ordinance of the said Borough and the laws of the Commonwealth, did corruptly refrain from doing his official duty in permitting the Fraternal Order of Orioles Nest No. 152, Norristown, Pa., to set up, maintain and exhibit certain gambling devices, to wit: slot machines ......; and further that he, the said George Bausewine, did conduct himself on the said fourteenth day of March A. D. 1944, and divers other times within two years last past, so as to injure or tend to injure, obstruct and prevent public justice and the administration of government, against the peace and dignity of the Commonwealth of Pennsylvania."

The court ruled the first part of this bill could be sustained as a charge of non-feasance in office, failing

to discharge his duties, and as such submitted it to the jury, but withdrew from its consideration the second part charging obstruction of justice. No valid objection can prevail to having two or more counts included in one bill where they are founded on the same facts and arise out of the same offense.

Appellant claims that this was a fundamental and prejudicial error in that he was called upon to answer a new and different charge than that averred in the bill. He concedes, as indeed he must, that the caption is not part of the indictment (*Brown v. Commonwealth,* 78 Pa. 122) and he does not claim that the first part of the bill does not sufficiently charge non-feasance in office, but asserts that the trial judge withdrew from the consideration of the jury bill No. 95-4, which charged non-feasance, because the evidence was insufficient to establish that offense. At that time the trial judge stated that there was not sufficient evidence to support the averments in that bill, but called attention to the fact that the averment in the bill under consideration was different. The former charged the defendant *with aiding and abetting the Orioles in setting up and maintaining the slot machines.* The trial judge then said that the non-feasance should have been stated in that bill as in bill No. 95-5, now under attack. It is argued also that under section 13 of the Act of March 31, 1860, P. L. 427, 19 PS §433, amendments made during the trial are limited to instances where there have been variances between the indictment and the evidence offered in proof thereof; that here there was no such variance and that the change went to the substance of the indictment, and as amended it charged a different offense. We do not agree at all with this position. There was no amendment made or new charges introduced. The well recognized rule is that every indictment for a common law offense shall be deemed sufficient if it charges the crime so plainly that the nature of the offense may be understood, that the courts look more

to attaining substantial justice than supporting technical and artificial objections to the pleadings: *Commonwealth v. Norris,* supra, p. 64. The defendant was not harmed or prejudiced by the court's action. We find no merit in this complaint.

The last objection that the sentence is invalid must be sustained. The court imposed sentence on each bill, directing the defendant in each case to pay a fine of $100 and undergo imprisonment in Montgomery County prison in single and solitary confinement at labor for not less than 4 months and not more than 23 months until the sentence is complied with. The sentences to run concurrently. The appellant was convicted of misdemeanors at common law. Under Pennsylvania common law, felonies are punishable by solitary confinement and hard labor, but misdemeanors are punishable by fine and imprisonment: *Commonwealth v. Gable,* 7 S. & R. 423, 435.

Under section 1101 of the Penal Code of June 24, 1939, P. L. 872, 18 PS §5101: "Every offense now punishable either by the statute or common law of this commonwealth and not specifically provided for by this act, shall continue to be an offense punishable as heretofore." These offenses, therefore, were punishable by "fine and imprisonment." *Commonwealth v. De Grange,* 97 Pa. Superior Ct. 181, 188. Imprisonment or simple imprisonment means confinement in a county jail or workhouse. Imprisonment at labor by separate or solitary confinement means confinement in the penitentiary or a suitable county prison: *Commonwealth of Pa. v. Arbach,* 113 Pa. Superior Ct. 137, 139, 172 A. 311.

The Act of June 19, 1911, P. L. 1055, §6, as amended by the Act of June 29, 1923, P. L. 975, §1, 19 PS §1057, authorizing imposition of sentence for indefinite term, applies only to crimes punishable by imprisonment in a state penitentiary: *Commonwealth ex rel. Guiramez v. Ashe, Warden,* 293 Pa. 18, 20, 141 A. 723. Where there is no punishment fixed by statute, the court may

pass judgment of a character similar to that provided for the class of offenses to which the particular crime belongs: *Commonwealth v. Kelsea,* 103 Pa. Superior Ct. 399, 401, 157 A. 42.

As there is no defect in the indictment or error in the trial it is not necessary to reverse the proceedings, but as the sentence is improper the record will be remitted for the passing of a proper sentence: *Commonwealth of Pa. v. Williams and Breese,* 102 Pa. Superior Ct. 216, 156 A. 711; *Commonwealth ex rel. Paige v. Smith, Warden,* 130 Pa. Superior Ct. 536, 548, 198 A. 812.

. We have carefully considered this record and read with interest the exhaustive brief of counsel for the appellant. All the questions discussed therein have been carefully considered. We are convinced that appellant had a fair, impartial and legal trial. Practically all the legal positions taken by him were adopted by the trial judge and he has not complained of any inadequacy or unfairness in the charge.

The conviction is sustained, but the record is remanded for resentence according to law.