FRED WARNER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 27846.)

Court of Claims, February 11, 1947.

*Joe Schapiro* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

LAMBIASE, J. Claimant sues to recover damages for false imprisonment. The facts established upon the trial herein are as follows: On June 21, 1944, claimant was taken, against his

will, from his farm in the town of Fenner, Madison County, New York, by a New York State Trooper and by employees of the Marcy State Hospital, an institution owned, operated, and maintained by the State of New York for the care and treatment of the mentally ill; and he was by them, on that day, brought to said Marcy State Hospital, where he was detained and given care and treatment thereafter until he was released therefrom on August 21, 1944, after a jury had declared him to be sane in a proceeding brought on his behalf to procure his release.

Claimant's admission to said hospital was upon the authority and sanction of a certificate dated June 18, 1944, signed by one Samuel H. Raymond, M. D., Health Officer of the Towns of Cazenovia and Fenner, made and issued by him pursuant to the provisions of section 72 of the Mental Hygiene Law of the State of New York in effect on the date of claimant's admission. Said certificate concededly did not contain a statement to the effect that said health officer had *personally* examined the claimant prior to his execution of said certificate. The certificate received in evidence contains, among other things, the printed words and blanks: " I hereby certify that on the..........day of................19...., I examined the said.............. and that in my opinion he is mentally sick  *  *  *." The aforesaid blanks had not been filled in, and no such personal examination as required by the statute (section 72 aforesaid hereinafter set forth) had in fact been made.

Subsequent to claimant's involuntary admission, and while he was being detained at said State hospital and was being given care and treatment as a mentally ill person, an application was made pursuant to section 74 of the Mental Hygiene Law of the State of New York to the County Judge of Madison County, New York, for an order adjudging claimant to be mentally ill, and certifying him to an institution for the care and treatment of the mentally ill. This application was based upon a petition subscribed and sworn to by claimant's wife on June 18, 1944, praying for the commitment of claimant as a mentally ill person, and upon a medical certificate, subscribed and sworn to July 3, 1944, of two qualified examiners in lunacy who had been called in at the request of the superintendent of said State hospital to make an examination of claimant, both of which examiners were employees of the State of New York, though not connected with the Marcy State Hospital.

On said papers aforesaid and without a hearing being had in the matter, the County Judge of Madison County, New York,

did, on July 5, 1944, make an order adjudging claimant to be insane and committing him to the Marcy State Hospital. Service of a notice of said commitment proceedings was dispensed with by the judge making the order upon the grounds that the certificate of the examiners recited that claimant was " emotionally unstable and entertains ideas of persecution, does not understand the nature of his illness and such service would be detrimental to his health."

During the time of his detention at said hospital, claimant was given three electric shock therapy treatments during the course of which, or as a result of which, he sustained a fracture of his right shoulder, more particularly a fracture of the coracoid process of the right scapula, and an injury to his back.

Claimant contends that his involuntary admission and detention by the hospital authorities was unauthorized and illegal from its inception in that it was originally based upon the health officer's certificate, which was not made in conformity with and did not contain the information required by the applicable statutes of the State of New York; that his care and treatment at said hospital with resulting physical injuries to him constitute an invasion of his personal and civil rights; that the State committed slander with respect to him and subjected him to the expense of attorney's fees to procure his release; and that by reason of the acts of the State, its agents, officers, and employees, he sustained substantial damage, the elements of which are more particularly hereinafter discussed.

The State on the other hand maintains that claimant's claim herein was not timely filed, and that consequently this court is without jurisdiction in the premises; that claimant's admission to and detention in the aforesaid State hospital was proper and legal; that claimant has failed to prove facts sufficient to constitute a cause of action; that if it should be held by this court that claimant's detention between June 21, 1944, and July 5, 1944, both dates inclusive, was illegal and unauthorized, the damages to be awarded should be nominal; and that lastly, without admitting that any part of claimant's detention was illegal, the detention from July 5, 1944, to the date of claimant's release was, by virtue of an order, legal on its face and issued by a court of competent jurisdiction. It urges that because of the foregoing, claimant's claim should be dismissed.

We are satisfied that the facts proved by claimant make out a cause of action for false arrest and imprisonment for the entire period of his detention at the Marcy State Hospital,

that is to say, from June 21, 1944, to August 21, 1944, both dates inclusive. In our opinion the contentions of the State herein have no basis in fact or in law.

This claim was filed October 5, 1944, within ninety days of August 21, 1944, the date of claimant's discharge and release from Marcy State Hospital. The State contends that this court is without jurisdiction to entertain this claim because it was not filed within ninety days of claimant's arrest or, at the latest, within ninety days from July 5, 1944, the date of the order of commitment herein. The false imprisonment terminated with claimant's discharge on August 21, 1944. We hold, therefore, that his claim was timely filed, since the date of the filing thereof is within ninety days of the date of claimant's discharge. (*Dusenbury* v. *Kielly,* 85 N. Y. 383; *Tierney* v. *State of New York,* 292 N. Y. 523.)

Since the State, while not admitting any illegal detention of claimant, has made a distinction between claimant's detention during the period before July 5, 1944, and the period of detention subsequent thereto, we shall discuss claimant's arrest and detention herein with reference to that date.

As to the detention prior to July 5, 1944: Section 70 of the Mental Hygiene Law enumerates the admission procedures relative to the admission to and confinement in a State hospital, State psychopathic hospital, or a licensed private institution of mentally ill persons not in confinement on a criminal charge. Of these procedures we are concerned, in this case, only with those set forth in paragraphs (b) and (d) of subdivision 1 of said section, and they read as follows: " (b) On certificate of health officer * * * (d) On court certification."

Section 72 of the Mental Hygiene Law, entitled " Admission on certificate of health officer " in pertinent part now provides: " The director or physician in charge of any state hospital, except the Matteawan and Dannemora state hospitals, or of any licensed private institution for the care and treatment of the mentally ill, may, *when requested by a health officer,* receive and care for in such hospital or institution as a patient for a period not exceeding sixty days, from and inclusive of the date of the request, any person who needs immediate care and treatment because of mental derangement other than drug addiction or drunkenness. Such request for admission of a patient *based upon a personal examination* shall be in writing and shall be filed at the hospital or institution at the time of his reception, together with a statement in a form prescribed

by the commission giving such information as he may deem appropriate. * * * Any such patient who is deemed by the director not suitable for such care shall, upon the formal request of the director, be removed forthwith from the hospital or institution by the public welfare officer responsible, and, if he is not so removed, the town, city or county in which the patient has a legal settlement as provided by the social welfare law, * * * shall be liable forthwith for all reasonable expenses incurred under the provisions of this section on account of such patient. Unless the patient shall sign a request to remain as a voluntary patient under the provisions of section seventy-one of this chapter the health officer making application shall cause such patient to be examined by one or two qualified examiners, and if found mentally ill the director or the physician in charge shall cause him to be duly admitted under the provisions of sections seventy-three or seventy-four of this act, or, if found sane, shall cause him to be removed therefrom before the expiration of said period of sixty days. * * * A report of the admission of a patient for observation under the provisions of this section together with copy of the statement of health officer shall be mailed to the department within ten days after such admission.'' (Emphasis supplied.)

Section 75 of the Mental Hygiene Law entitled " Emergency admission on incomplete court order " provides: " Notwithstanding the requirements of section seventy-four that an alleged mentally ill person be duly admitted by an order of the court, in a case where the condition of such person is such that it would be for his benefit to receive immediate care and treatment, or where there is no other proper place available for his care and treatment, or if he is dangerous by virtue of his mental condition so as to render it necessary for public safety and that he be immediately confined, he shall be forthwith received by a state or licensed private institution authorized by law to care for the mentally ill. In such case such mentally ill person shall be received by such institution upon a certificate, executed by two qualified examiners after examination and upon a petition as provided in section seventy-four. By virtue of such certificate and such petition, such mentally ill person may be retained in such institution for a period not to exceed ten days, from and inclusive of the date of the certificate. Prior to the expiration of such time an order admitting him for care and treatment must be obtained in the manner provided by section seventy-four, unless he be discharged or admitted under the

provisions of section seventy-one or seventy-three. *The director or person in charge of any such institution may refuse to receive such mentally ill person upon such certificate and petition, if in his judgment the reasons stated in the certificate are not sufficient or the condition of the patient is not of such character, as to make it necessary that the patient should receive immediate treatment."* (Emphasis supplied.)

Subdivision 3 of section 70 of the Mental Hygiene Law provides: " Certificates, as required by sections seventy-two, seventy-three, seventy-four and seventy-five, must show that the person is mentally ill and, if required to be made by two qualified examiners, they shall jointly make a final examination of the person alleged to be mentally ill within ten days next before and inclusive of the date of the granting of the order and if no order is required within ten days next before admission. The date of the certificate shall be the date of such joint examination. All certificates *shall contain the facts and circumstances upon which the judgment of the examiners is based* and shall show that the condition of the person examined is such as to require care and treatment in an institution for the mentally ill." (Emphasis supplied.)

The foregoing provisions of the Mental Hygiene Law of the State of New York were, without material change, in full force and effect at all times herein mentioned except as follows: Section 72 was, by section 3 of chapter 665 of the Laws of 1944, effective October 1, 1944, amended so that " sixty days " was substituted for " thirty days " wherever appearing in said section. Section 75 was amended by chapter 511 of the Laws of 1945, effective April 2, 1945, which substituted " ten " for " sixty " in the sentence beginning, " By virtue of ".

It cannot be seriously claimed herein, in view of the fact that the original proceedings against claimant were initiated under section 72 of the Mental Hygiene Law, that the arrest and detention of claimant were justified by necessity and because of emergent conditions. There is no proof that claimant at the time of his arrest and detention was mentally ill, and that he was dangerous by virtue of his mental condition so as to render it necessary for public safety that he be immediately confined; nor was there proof of any of the other conditions described in section 75 of the Mental Hygiene Law which would make said section applicable. Furthermore, the provisions of said section 75 have not been complied with as a reading of said section readily discloses. The gratuitous statement to the effect that

" Because of this man's mental condition it is felt that an examination at his home might disturb him to such an extent that he might attempt harm to himself and others ", made by the health officer in his certificate herein, not being based upon any personal examination of the claimant, is of no probative value.

Insane persons who are not dangerous or who do not commit a breach of the peace, cannot lawfully be restrained without legal proceedings. The certificate of the health officer, under the circumstances herein, was absolutely void, and the arrest and detention of claimant thereunder was unlawful and unauthorized. (*Worden* v. *Davis,* 195 N. Y. 391, 393.)

The gravamen of an action for false imprisonment is an unlawful arrest and detention. (*Emmerich* v. *Thorley,* 35 App. Div. 452; *Schultz* v. *Greenwood Cemetery,* 190 N. Y. 276.) Imprisonment begins at the arrest, and any physical detention is imprisonment. (*Egleston* v. *Scheibel,* 113 App. Div. 798.) Any imprisonment which is not justifiable is a false imprisonment and subjects him who is responsible therefor, whether as principal or agent, to an action in tort for damages. (*Vernes* v. *Phillips,* 266 N. Y. 298, 299–300.)

As the court said, in speaking of false imprisonment, in *Fischer* v. *Langbein* (103 N. Y. 84, 89–90): " In the case of void process the liability attaches when the wrong is committed and no preliminary proceeding is necessary to vacate or set it aside, as a condition to the maintenance of an action." (*Day* v. *Bach,* 87 N. Y. 56, 60.) Void process is not a protection. (*Washer* v. *Slater,* 67 App. Div. 385.)

As to claimant's detention beyond July 5, 1944: Claimant contends that despite the Judge's order of July 5, 1944, his illegal detention continued until he secured his release and discharge on August 21, 1944. The defendant maintains that there can be no question as to the legality of claimant's detention after said date because it was sanctioned and authorized by an order, legal on its face, issued by a court of competent jurisdiction.

It has been held that detention continues until a discharge (*Allen* v. *Fromme,* 141 App. Div. 362, 364), wherein the court said, discussing the question of detention: " While no case in this state identical with this is called to our attenton, the question involved has been decided by the Court of Appeals. (*Worden* v. *Davis,* 194 N. Y. 391 [*supra*].) That case involved the right to recover the disbursements and expenses incurred by plaintiff after the discharge on his own recognizance. The question

turned, as Judge HISCOCK stated, upon the duration and termination of the imprisonment, and it was decided, in effect, that the imprisonment continued until the order of the court dismissing the warrant.''

Claimant was arrested June 21, 1944, and detained thereafter under a void procedure. The procedure employed was without warrant in the law. The point involved herein is not one of technicalities but of substance. As was said in *Mandeville* v. *Guernsey* (51 Barb. 99, 102–103 affd. 50 N. Y. 669) which case is cited with approval in *Snead* v. *Bonnoil* (166 N. Y. 325, 329): '' A person who has arrested a party without process, or on void process, wrongfully, cannot detain him on valid process, until he has restored such party to the condition he was in at the time of his arrest, at least to his liberty. The law will not permit him to perpetrate a wrong for the purpose of executing process, nor to use process for the purpose of continuing imprisonment, commenced without authority, and by his wrongful act.'' It would not do to hold that the illegality of a person's arrest upon an unfounded charge could be cured upon a subsequent charge or conviction for another offense. (*Snead* v. *Bonnoil,* 166 N. Y. 325, 329, *supra; MacDonnell* v. *McConville,* 148 App. Div. 49, affd. 210 N. Y. 529.)

We are in accord with the statement of law that is enunciated in 145 American Law Reports at pages 730–731 and is cited with approval in *Douglas* v. *State of New York* (184 Misc. 441, affd. 269 App. Div. 521, affd. 296 N. Y. 530) that: '' In actions for false imprisonment predicated upon the institution of, or conduct in connection with, lunacy proceedings, the courts have applied the rule, which governs actions for false imprisonment in general, that imprisonment which is authorized by process which is regular on its face and is issued by a court of competent jurisdiction is lawful, and cannot give rise to a cause of action for false imprisonment, even though the process was erroneously or improvidently issued. It protects those securing the order resulting in arrest or confinement, those who participated in the proceedings, and also those acting under the order or warrant.'' And we agree that in the category of those protected, as stated by the court in the *Douglas* case (citing *Zuckerman* v. *Sanitarium Co.,* 92 Ore. 90) are included institutions and asylums in which the subject is confined pursuant to the terms of the order.

It is our opinion that the defendant herein was not entitled to the protection ordinarily accorded or afforded one acting under valid process. The State knew or should have known that claimant's admission and detention under the certificate of the health officer were illegal and invalid *ab initio.*

Section 72 of the Mental Hygiene Law hereinbefore set forth provides that the health officer's request for the admission of a patient shall be filed in the hospital or institution at the time of his reception together with a statement in the form prescribed by the commission giving such information as he may deem appropriate. Said section also provides that a report of the admission of said patient, together with a copy of the statement of the health officer shall be mailed to the department within ten days after such admission. Presumably this latter thing was done since on the last page of the health officer's certificate in evidence there appears the legend " Certified copy forwarded 6/29/44." It is not unreasonable to presume that the defendant, through its agents and officers knew or should have known of the circumstances surrounding claimant's detention.

The subsequent acts of the State through its agent and officer, the Superintendent of the Marcy State Hospital, in causing the examination of the claimant to be made by two qualified examiners in lunacy and in procuring the commitment order made by the County Judge of Madison County did not absolve the State under the circumstances herein from its liability because of its participating in claimant's original illegal arrest and detention. Under the authorities herein cited, it was necessary for the State to restore claimant to his liberty and thus terminate his previous illegal detention before procuring his commitment on court certification if it desired to enjoy the protection afforded by such certification. The arrest and detention of claimant was unlawful and the State is liable for all the injurious consequences to him which resulted from the wrongful act. (*Tierney* v. *State of New York*, 266 App. Div. 434, affd. 292 N. Y. 523, *supra*.)

The evidence discloses that the damages sustained by claimant are substantial; the extent, component elements, and the amount thereof as testified to by claimant and his witnesses are not contradicted or refuted by any evidence on the part of the State. The damage to claimant's growing crops and to his livestock was amply established. The law places the damage for the loss of an annual crop as the value of that crop at the time of the trespass. Where, as here, the damage was to partially developed crops, there is little, if any, intrinsic value to the crops at that stage, but the farmer is entitled to a value on maturity of the crops based on its then condition. We hold that under the circumstances of this case the value of the crops as testified to herein is the proper measure of damages. (*Mennito* v. *Town of Wayland*, 56 N. Y. S. 2d 654, 673, and cases collated and cited therein.)

The amount of the attorney's fees as proved herein and paid by claimant in connection with the legal steps taken on his behalf to obtain his release from Marcy State Hospital was not questioned, but objection to its propriety as an element of damage was made by the State. Adjudicated cases leave no doubt that it is a recoverable and proper item of damage in cases of this kind. (*Worden* v. *Davis,* 195 N. Y. 391, 393, *supra; Allen* v. *Fromme,* 141 App. Div. 362, *supra; Nossek* v. *Todd & Son,* 160 Misc. 528.)

The State does not dispute the evidence as to claimant's injuries to his right shoulder and to his back, but it asserts that these injuries were sustained by claimant during the course of the care and treatment given him subsequent to July 5, 1944, following the making of the Judge's order of commitment herein, and pursuant to consent therefor given by claimant's wife. We are of the opinion that under the circumstances of this case, although we allowed the written consent given by claimant's wife to be admitted in evidence herein on the question of the right of the State to administer to the claimant the electric shock therapy treatments which were given to him subsequent to July 5, 1944, said written consent thus given by claimant's wife is entirely ineffectual and not binding upon the claimant.

Claimant seeks compensatory damages only. We are, therefore, in an accompanying decision, making an award to claimant in an amount which, in our opinion, properly and adequately compensates him for the damages sustained by him as hereinbefore set forth.

The motions made by the State at the end of claimant's case and at the end of the entire case are in all respects respectively denied, with an exception to the State.