**David SLAUGHTER, Appellant
(Defendant),**

v.

**The STATE of Wyoming, Appellee
(Plaintiff).**

**No. 5439.**

Supreme Court of Wyoming.

June 12, 1981.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, and Sylvia Lee Hackl, Asst. Public Defender, Wyoming Public Defender Program, signed the brief on behalf of appellant. Sylvia Lee Hackl, Cheyenne, appeared in oral argument.

John D: Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, and Allen C. Johnson, Sr. Asst. Atty. Gen., signed the brief on behalf of appellee. Allen C. Johnson, Sr. Asst. Atty. Gen., appeared in oral argument.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

Appellant was convicted of escape pursuant to § 6–8–301, W.S.1977, Cum.Supp. 1980.[1] On appeal he challenges his conviction on two bases. First, he contends that his conduct failed to constitute the crime of escape from a county jail as defined in § 6–8–301, supra, since he was not detained in a county jail when he extricated himself from police custody. Therefore, appellant argues that the trial judge erred in denying motions for dismissal and acquittal, and in instructing the jury that the defendant did not have to be physically in the county jail

1. Section 6–8–301, W.S.1977, Cum.Supp.1980: "Any person imprisoned or confined in any county jail within the state of Wyoming pursuant to sentence or while awaiting trial, or lawfully held in any manner in any county jail, who escapes from the county jail shall be imprisoned in the penitentiary not to exceed three (3) years, fined not more than five hundred dollars ($500.00), or both."

at the time of his escape. Appellant's second claim is that an element of the crime of escape is intent. He asserts that here the trial judge's instructions to the jury failed to require the jury to find that element's presence. Therefore, appellant concludes he is entitled to a new trial.

We will affirm.

On September 25, 1979, sometime after 11:00 a. m., the appellant—David Slaughter—was arrested. He was taken to the Natrona County jail and booked. Later that afternoon, he was handcuffed and escorted "across the corridor to the office of the District Court." The handcuffs were removed, and appellant was allowed to converse with his attorney in the district court's outer office. He then announced that he had to use the restroom. When he left the office and proceeded down the hall, a deputy followed a few paces behind him. The deputy then waited for appellant outside the restroom door. Soon the deputy heard a commotion, so he entered the bathroom and discovered that appellant was gone. Two days later appellant was arrested for escape.

Appellant's trial commenced on August 11, 1980. On August 13, 1980, the jury found him guilty of escaping from a county jail. As a result on November 18, 1980, he was sentenced to a term in the Wyoming State Penitentiary of not less than one and one-half years nor more than three. No credit for jail time was allowed.

■ Appellant's first claim of error requires a close examination of § 6–8–301, supra. In particular, appellant focuses on the statute's language that "[a]ny person * * * lawfully held * * * in any county jail * * * who escapes from the county jail shall be imprisoned * * *." From this appellant argues that to be guilty of the crime of escape as defined in § 6–8–301, supra, a defendant must have escaped from the actual confines of a county jail.

To bolster his position, appellant points to this court's decision in *Horn v. State*, Wyo., 556 P.2d 925 (1976). There it was said:

"Our state has adopted the rule of construction that a penal statute cannot be extended by implication or construction to persons or things not expressly brought within its terms, nor to cases not within the letter of the statute; and also that all doubts as to the construction are resolved in favor of the defendant. [Citations.] In applying this precept of statutory construction in circumstances such as this any ambiguity ought to be resolved in favor of the defendant. [Citations.]" 556 P.2d at 927.

But, we do not find any ambiguity in the statute. We believe that a reasonable person reading the statute would understand it to proscribe escape by a person committed to the custody of the county jail. Thus, it would not matter if the escape were actually made from a place other than a building labeled the county jail, so long as the defendant was committed to the custody of the county jail at the time.

Other jurisdictions when faced with similarly worded statutes have adopted the same approach. For example, in *State v. Campbell*, Me., 314 A.2d 398 (1974), the statute in question provided:

"If a convict sentenced to the State Prison for life or for a limited term of years or transferred thereto from the Men's Correctional Center under section 808–A or committed thereto for safekeeping under Title 15, section 453, * * * escapes therefrom, or forcibly attempts to do so, he may be punished by confinement to hard labor for any term of years, to commence after the completion of his former sentence or upon termination of such sentence by the State Probation and Parole Board * * *." 314 A.2d at 400, fn. 1.

The Maine Supreme Court developed the facts of the case as follows:

"On July 12, 1972, appellant requested, and was granted, permission to visit his mother in Oakland but on condition that he be escorted by a prison official and return to the Maine State Prison the same day. Pursuant thereto appellant and the guard journeyed to Oakland (which is in Kennebec County) where the

Campbell family lived. During the course of this visit the appellant requested, and was allowed, to leave the house, which lacked plumbing facilities, and go a few feet beyond to an out-building with toilet facilities. On appellant's failure to return, the guard inspected this out-building and found a back door from which one could proceed directly into a wooded area. A preliminary search of the area failed to reveal appellant's presence and the matter was promptly reported to various police agencies. The search was continued the following day without results. However, on July 14, 1972, appellant was returned by a prison official to the prison from the Waterville City Jail. This prosecution ensued." (Footnote omitted.) 314 A.2d at 401.

The court then held:

" * * * We [have] recognized 'the common law principle that a prisoner who escapes while employed outside the walls of the institution of confinement is considered to have escaped from the institution.' [*Boyce v. State,*] 250 A.2d at 202. Adopting this rationale, it is immaterial that at the time of the escape the inmate was engaged in an authorized, or even unauthorized activity requiring his absence from the physical confines of the institution because we reach the identical conclusion, namely, his escape was from the Maine State Prison to which he had been committed by the Court." 314 A.2d at 403.

The Iowa Supreme Court ruled in *State v. Eads,* Iowa, 234 N.W.2d 108, 111, 113 (1975) that when the language, any person "confined in any jail" was used to describe who could be convicted of the crime of escape, it included all those committed to jail whether or not they were physically located inside the jail. As the court stated, "Obviously a prisoner committed to jail who breaks away from the custodial officer on his way to confinement would be guilty of escape though he was never incarcerated."

Accordingly, we conclude that a reasonable reading of § 6-8-301, supra, does not limit the crime of escape, as therein defined, only to situations where an individual escapes from a building that is labeled the county jail. Included in the statute are those escapes which are made by individuals who have been committed to the custody of the county jail, regardless of where the escape actually occurs.

Therefore we must hold that the district court properly denied the defense motions for dismissal and acquittal. Further we cannot find any error in the district court's giving of Instruction No. 8.[2]

The other issue we must address concerns Instruction No. 12 which provided:

## "INSTRUCTION NO. *12*

"YOU ARE INSTRUCTED that when the evidence shows that a person voluntarily did an act which the law declares to be a crime, it is no defense that he did not know that his act was unlawful or that he believed it to be lawful."

Appellant argues that by giving this instruction the district court erred. The basis of his contention is that:

"The effect of Instruction Number 12 is to remove from the jury's consideration any question of the intent of the accused at the time of the alleged offense. In turn, this relieves the State of the burden of proving that the accused intended to do the act with which he is charged."

We cannot agree with appellant's underlying assumption as to the effect of this instruction because the instruction addressed the fact that ignorance of the law is not a defense. It still required the jury to find that the act was done voluntarily. For general intent crimes, this is all that was necessary for the jury to find, because if the act done was done voluntarily, "the inference thereupon arises that the defend-

2. Instruction No. 8:

"YOU ARE INSTRUCTED that to find the Defendant guilty of the crime charged you need not find that he was within the physical confines of the Natrona County Jail when he escaped but rather that he was in the lawful custody of the Natrona County Jail and or it's [sic] personnel at the time."

ant intended that which resulted." *Dora-dor v. State*, Wyo., 573 P.2d 839, 843 (1978).

█ Under Instruction No. 12, the State still had the burden of establishing that the appellant voluntarily left the custody of the county jail. Since no alternative instructions were offered, we need not decide whether this instruction was the best of all possible worlds. We merely hold that it was not error to give it.

Affirmed.

ROONEY, Justice, concurring.

I concur with the majority opinion but I want to point more specifically to the language of § 6–8–301, W.S.1977, Cum.Supp. 1980[1] and to the fact that the legislature used the words "imprisoned or confined" to mean two different things.

"* * * We must give effect, if possible, to every word, clause and sentence of the statute. * * * The word 'or' is usually used in the disjunctive sense, and when two clauses are expressed in the disjunctive, this generally indicates alternatives, requiring separate treatment. [Citations.] In other words, the subject of each clause should be considered separately, without requiring that the subjects both be satisfied. * * *" *Basin Electric Power Cooperative v. State Board of Control*, Wyo., 578 P.2d 557, 560 (1978).

And the legislature cannot be presumed to have used the words "imprisoned or confined" in the statute without full intention to ascribe separate meaning to the words "imprisoned" and "confined." The legislature cannot be presumed to intend futile things. *Yeik v. Department of Revenue and Taxation*, Wyo., 595 P.2d 965 (1979); *DeHerrera v. Herrera*, Wyo., 565 P.2d 479 (1977).

Accordingly, it is unnecessary to attach a "constructive" meaning to the words "confined in any county jail" rather than to give them their literal meaning. This because the words "imprisoned" and "imprisoned in a county jail" have customarily included

physical detention of any nature. The word "imprisonment" without more is taken to be detention in a county jail. *Commonwealth v. Bausewine*, 156 Pa.Super. 535, 40 A.2d 919 (1945) (*Rev'd on other grounds*, 354 Pa. 35, 46 A.2d 491); *Ex Parte Cain*, 20 Okl. 125, 93 P. 974 (1908); *James v. Commonwealth*, Ky., 259 S.W.2d 76 (1953). "Imprisonment" is any deprivation of liberty through use of force, or through express or implied threat of force. It is physical detention without confinement. *McKendree v. Christy*, 29 Ill.App.2d 195, 172 N.E.2d 380 (1961); *Commonwealth v. Jones*, 211 Pa.Super. 366, 236 A.2d 834 (1967); *Hales v. McCrory-McLellan Corporation*, 260 N.C. 568, 133 S.E.2d 225 (1963); *Warner v. State*, 189 Misc. 51, 68 N.Y.S.2d 60 (1947) (*Rev'd on other grounds*, 272 A.D. 954, 71 N.Y.S.2d 559); *Savannah Guano Co. v. Stubbs*, 138 Ga. 409, 75 S.E. 433 (1912). And of course, it includes an arrest or actual confinement in a penal or detention institution. *Montgomery Ward & Co. v. Medline*, 104 F.2d 485 (4th Cir. 1939); *McAlmond v. Trippel*, 93 Cal.App. 584, 269 P. 937 (1928); *Commonwealth ex rel. Dailey v. Myers*, 186 Pa. Super. 176, 142 A.2d 381 (1958); *Ex Parte Harrison*, D.C.Mass., 272 F. 543 (1921). It also includes the status while on "jail liberties" or "furlough" from a detention or penal institution. *Commonwealth v. Bey*, 221 Pa.Super. 405, 292 A.2d 519 (1972); *Doyle v. Boyle*, 19 Kan. 168 (1877); *People v. Monaco*, 54 Misc. 25, 105 N.Y.S. 401 (1907).

There can be no question but that the appellant was deprived of his liberty at all times subsequent to his arrest and until he escaped during his use of the restroom. He was imprisoned during that period. Since the use of the word "imprisoned" without more has reference to the county jail, appellant's escape was in violation of § 6–8–301, W.S.1977, Cum.Supp.1980.

---

1. See footnote 1 in majority opinion for text of § 6–8–301.