**People of the State of Illinois, Plaintiff-Appellee, v. Artie Lee Bailey (Impleaded), Defendant-Appellant.**

Gen. No. 52,626.

First District, First Division.

June 23, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and

James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Joel M. Flaum, and James B. Haddad, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, defendant Artie Lee Bailey, Harold Johnson and James Smith were found guilty of rape and aggravated battery. Defendant Bailey was sentenced to the penitentiary for a term of six to ten years. Defendant contends that he was not proved guilty beyond a reasonable doubt. The other two defendants are not parties to this appeal.

At about 7:30 p. m. on July 23, 1966, the prosecutrix, a 16-year-old high school junior, finished work at Mt. Sinai Hospital and met a friend, Ida Tate. At about 9:00 p. m. they encountered the three defendants, with whom they were acquainted. Later, at about 11:00 p. m., as the two girls were walking down 18th Street, defendant Bailey ran out of an alley and placed his arm around the neck of the prosecutrix and held a knife at her throat. At his direction, Ida Tate left, and the prosecutrix and Bailey proceeded to a building in the 1600 block of Hamlin. On the way Bailey and the prosecutrix were joined by defendant Smith. As Bailey and Smith were trying to enter a vacant apartment, she broke away and fled down the steps. Bailey caught her at the bottom of the stairs, ripping her blouse. Bailey punched her in the face, breaking her jaw in two places. She was dazed, partially unconscious and fell down. She was knocked out for about ten minutes and was bleeding from the mouth. When she came to, Bailey was slapping her face because of Smith's insistence that he would not have intercourse

with a dead woman. About this time Johnson joined them. Bailey took off her underwear, and the three defendants had intercourse with her. Bailey and Johnson then left. She could not scream because her mouth was full of blood, and she could not get up or fight them off because she felt dazed. Smith again had intercourse with the prosecutrix, and she then asked him to let her go because she wanted to go to the hospital, and he gave her his shirt to replace her torn blouse. During the trial she identified a shirt stained with blood as the shirt Smith gave her.

The prosecutrix then went to Ida Tate's home to ask if Miss Tate's father would drive her home. Mr. Tate could not assist her because his car needed repairs. Finally a boy named Ronald helped her home.

When the prosecutrix arrived home she told her mother that "a boy had hit me and that I had been raped." This was the first time she had told anyone that she had been raped, and it was about fifteen minutes after the occurrence. Her brother took her to the Bethany Hospital, and they arrived there at about 12:30. The police were called and they took her back to the scene of the occurrence and then took her to the County Hospital. Her jaw was X rayed and wired, and she had the wires in her mouth for about eight weeks.

Defendant Bailey was brought in for identification while she was getting her mouth wired at the County Hospital. She did not say anything "because I had about thirteen or fourteen shots in my mouth." She pointed him out. Subsequent to the occurrence and before the trial, the prosecutrix received four threatening letters from defendants Bailey and Johnson.

On cross-examination the prosecutrix said she did not kiss Bailey when she met him, nor Johnson. She was not drinking that night. The weather was very warm, and people were sitting on their porches. When Bailey had the knife on her neck she thought he was playing. She and Bailey walked about one block, and there were a lot of

363

people on the street. When she went to Ida's house she did not tell Ida nor Ida's father what happened, nor did she tell the boy who took her home.

Two police officers testified for the State. Officer Daniel C. Bronke testified that he saw the prosecutrix at the Bethany Hospital at about 1:30 in the morning. She was there with her brother. Her jaw was shattered, and she was bleeding from the mouth and was very hard to understand. She told them what had happened and named her assailants. She went with the police officers to a building in the 1600 block of Hamlin, and they went up the back stairs to the first floor. A door had been forced open in a vacant apartment. The prosecutrix pointed out the corner of the room where she had been laying. The officer saw large bloodstains on the floor that were fresh and still wet. There were no liquor bottles of any kind in the room.

Officer James Griffin testified that he was assigned to the Homicide-Sex Unit. He saw the prosecutrix about 3:50 in the morning. He spent about twenty minutes with her and did not notice anything unusual or odors. She seemed sober and in great pain. Her face was swollen, and there was blood around her mouth. She named her three assailants. He arrested Bailey on July 24 at about 8:00 a. m. and Smith and Johnson on July 30.

The defense witnesses included Ida Tate. She and the prosecutrix were friends and had been together on July 23, 1966. During the evening they had a half-pint bottle of Seven Crown, and they each drank half of it. She saw the prosecutrix kiss Johnson and Bailey. At about eleven o'clock she and the prosecutrix were walking down Hamlin, when they met Bailey. He asked the prosecutrix for his knife, and she gave it to him. "He put his arm around her neck, and they were walking back towards Hamlin. Neither one of them seemed upset or anything, because she didn't say he was doing anything to her. They were walking along, just like they was earlier."

Later, at the Tate home, she saw the prosecutrix crying, and she went home.

Defense witness Willie Bailey testified that defendant Bailey was his brother, and that he had spent the evening in a parked car with Willie and some other fellows. At about eleven o'clock defendant Bailey left the car to find the prosecutrix. He did not find her and shortly returned to the car where he stayed until 11:30. Willie stated he had seen the prosecutrix at about 6:00 p. m. that evening. He smelled alcohol on her breath, and she was leaning up against a wall.

The three defendants testified and each denied having sexual intercourse with the prosecutrix. They saw her during the evening, and Johnson said "she acted like she was high, because she was hollering up and down the street and laughing." Smith saw defendant Bailey on Hamlin with the prosecutrix, but he did not see Bailey with a knife. Smith was shown the shirt which the prosecutrix said he gave her, and he denied that it was his. Bailey and Smith both denied striking the prosecutrix.

In rebuttal, Officer Bronke testified that when he saw the prosecutrix at 1:30 on the morning of July 24, and while she was in the squad car with him, he noticed no odor of alcohol, and she showed no signs of intoxication and her brother helped her walk.

Defendant contends that the testimony of the prosecutrix was not sufficiently clear and convincing to lead to an abiding conviction of guilt because there was no adequate corroboration, no medical report, no resistance nor outcry, and the threatening letters and the torn blouse belonging to the prosecutrix were never produced.

Defendant also points out that after the alleged rape, the prosecutrix said nothing about the occurrence to Ida, Ida's father or to Ronald, the boy who took her home. When she got home and told her mother and brother about it, neither called the police, and it was a nurse at

the Bethany Hospital who called the police. Defendant notes that when the police took the prosecutrix to the apartment, she did not go into the room with them; also there was no evidence that there was any physical examination of the vagina at either hospital, which might have been corroboration of forcible intercourse.

Defendant's authorities include People v. White, 26 Ill 2d 199, 202, 186 NE2d 351 (1962), where the Supreme Court held that the evidence of the prosecutrix was not clear and convincing, and in the absence of corroboration reversed a rape conviction. There the court said:

> "We have held that the testimony of a prosecutrix uncorroborated by other witnesses, may be sufficient to justify a conviction if such testimony is clear and convincing. . . . If the testimony is not clear and convincing, then corroborative evidence must be produced to support her testimony as against the denial of the defendant. . . . In People v. Schiro, 361 Ill 117, we said (p 120) : "We have repeatedly held that where a conviction of rape, statutory or otherwise, depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecutrix should be corroborated by some other evidence, fact or circumstance in the case.'

> "In People v. Fitzgibbons, 343 Ill 69, we pointed out that in a prosecution for rape, the testimony of the prosecutrix must be scrutinized with caution, and where evidence is offered substantially impeaching the truth of her statements and the defendant denies the crime, her evidence should be corroborated."

Defendant also asserts that lack of medical testimony requires reversal here and cites People v. DeFrates, 33 Ill2d 190, 195, 196, 210 NE2d 467 (1965), where a rape conviction was reversed, and the court said:

366

"Voluntary submission by the female, while she has the power to resist, no matter how reluctantly yielded, amounts to consent and removes from the act an essential element of the crime of forcible rape. . . .

"Considering the record as a whole, we are constrained to say that the testimony of the prosecutrix is not sufficiently convincing to lead to an abiding conviction of guilt, and was such that it required corroboration by some other testimony, fact or circumstance. . . . Again, it appears that the police sent the prosecutrix to a hospital for an examination, but no medical testimony was introduced to show its results."

Also, People v. Stagg, 29 Ill2d 415, 194 NE2d 342 (1963), where it is said (p 421):

". . . where, as here, the testimony of the prosecutrix alone is relied upon for a conviction, that testimony must be clear and convincing, and if it has been impeached, is inherently improbable, or is such that reasonable minds could not believe it, the conviction must be reversed. . . ."

And at p 422:

"Moreover, despite the fact that she testified as to a vicious attack . . . there was no evidence in the record of any medical examination or treatment of the complainant."

Defendant further argues that "it cannot be said that in the absence of medical proof; in the absence of the letters; in the absence of any resistance or outcry at a time when this was clearly possible; that the mere fact that she told her brother and mother about it and later in the hospital told the police can be regarded as sufficient corroboration of such a serious charge as rape.

Neither her mother or brother called the police," and neither of them testified. On this point defendant cites People v. Scott, 407 Ill 301, 95 NE2d 315 (1950), where the court said (p 306):

> "Neither the taxicab driver, who drove her home, nor the brother or mother of the prosecutrix, to whom she claims to have first made the complaint, testified at the trial. The failure of these witnesses to testify tends to lessen the spontaneous character of the complaint made to the officers and likewise weakens the corroborative quality of such evidence."

Defendant also contends that the testimony of the prosecutrix was impeached in a number of important respects, and as the defendant denied the charge of rape, the testimony of the prosecutrix cannot be regarded as clear and convincing and corroboration was essential. In support of this point defendant cites (1) the testimony of Ida Tate, in which she testified to a different state of facts than did the prosecutrix; (2) the testimony of the prosecutrix that she did not consume any liquor was false because of the testimony of Ida as to both of them drinking during the course of the evening and the further testimony of Willie Bailey and Johnson; and (3) the prosecutrix admitted that she had not given her correct age.

The State asserts that the testimony of the prosecutrix was corroborated (1) by Ida Tate confirming that defendant had a knife as he led the prosecutrix away with his arm about her; (2) Officer Bronke testified that the apartment to which the prosecutrix led them matched the description she had given. The door had been forced open, and there were fresh wet bloodstains on the floor of the apartment; and (3) although no member of the family reported or testified as to her complaint of rape, Officer Bronke said that he was investigating the rape complaint at about 1:30 a. m. on the night in question.

Initially, and after examining this record in detail, we think the alleged impeachment or contradiction of the testimony of the prosecutrix was not on substantial or material matters. As to her failure to tell Ida Tate, her father or the young man who assisted her home, we think there is merit to the State's argument that a girl who had just been raped four times by three boys might have been reluctant to proclaim her story. She immediately sought the assistance of her family and made a complaint to them within fifteen minutes after the occurrence. The alleged inconsistencies in her testimony as to her age and drinking liquor are not material here, where the charge is forcible rape.

The question of the credibility of the witnesses was for the trial court's determination. In People v. Henson, 29 Ill2d 210, 193 NE2d 777 (1963), it is said (p 213):

"We have repeatedly held that where a case is tried without a jury the determination of the credibility of the witnesses and the weight to be given to their testimony is for the trial judge, and this court will not substitute its judgment on such matters for that of the trial judge, who saw and heard the witnesses."

We believe the pronouncements made in People v. Mack, 25 Ill2d 416, 420, 185 NE2d 154 (1962), apply here:

"We do not, however, regard these cases as establishing an inflexible rule of law requiring in all cases that the testimony of the complaining witness in a rape case must be corroborated. Indeed, we have frequently stated that corroboration is not necessary where the testimony of the complaining witness is clear and convincing .... The unvarying rule of law is that in a rape case, as in any criminal case, the evidence must be sufficient to establish the guilt of the defendant beyond a reasonable doubt. Where

we have reversed cases because of failure to corroborate the testimony of the complaining witness, we have done so not because of any fixed rule requiring corroboration but because, upon the state of the record in the particular case, the evidence left a reasonable doubt as to the guilt of the defendant."

■ We conclude that the testimony of the prosecutrix was clear and convincing and sufficient to support defendant's conviction of rape beyond a reasonable doubt. There appears to be no reason in this record for regarding the testimony of the prosecutrix as unworthy of belief. Medical evidence is not required to prove a rape, and this is true even when it is established that the victim went to a hospital after the rape occurred. (People v. Boney, 38 Ill2d 23, 24, 230 NE2d 167 (1967).) Moreover, the testimony of the police officers as to the battered condition of the prosecutrix shortly after the alleged rape, and what they saw in the vacant apartment to which she led them, was ample evidence to corroborate her testimony.

■ Next considered is defendant's contention that his conviction for aggravated battery was not proved beyond a reasonable doubt and cannot stand. We find no merit in this contention, and discussion is not required in view of our conclusions in affirming defendant's conviction of rape. The record indicates that defendant was sentenced on the rape charge only, the greater offense. Therefore, we find no reason to disturb the judgment of the trial court that defendant was guilty of rape and aggravated battery beyond a reasonable doubt.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.