(No. 37689.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAY STAGG, Plaintiff in Error.

*Opinion filed November 26, 1963.*

JULIUS LUCIUS ECHELES and MARSHALL SCHWARZ-BACH, both of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant was charged with assault with intent to rape Ann Diebold and with robbing her of a cigarette lighter worth $5 and a purse worth $4. The jury found him not guilty of the robbery and guilty of the assault with intent to rape for which he was sentenced to the penitentiary for a term of not less than one nor more than three years.

The defendant contends here that: (1) the evidence was insufficient to sustain the conviction of assault with intent to rape; (2) he was deprived of the right to consult with his counsel at all stages of the proceedings; (3) the venue in Cook County was not established; (4) the court erred in

its ruling concerning the admissibility of certain evidence; and (5) the court should have required the State to furnish the defendant for impeachment purposes all statements made by the prosecutrix.

An assault with intent to rape includes every element of the crime of rape except penetration. "Rape is the carnal knowledge of a female forcibly and against her will, and an assault is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another." (*People* v. *Cieslak,* 319 Ill. 221, 224.) Therefore, to constitute the offense of assault with intent to rape, the defendant (1) must be guilty of assault, (2) have an intent to have carnal knowledge of the female, and (3) have a purpose to carry this intent into effect by means of force and against the will of the female. (1 Wharton, Criminal Law and Procedure, p. 664.) The proof of a mere assault and battery however aggravated it may be, without the intent to rape, will not warrant a conviction of assault with intent to rape.

Ann Diebold testified that about 2:10 P.M. on November 20, 1961, she left her home to go shopping but instead went to a tavern where she stayed and drank with friends, including James Michaels, until approximately 5:10 P.M. While there, she drank from four to six drinks and upon leaving she drove south on Milwaukee Avenue behind Michaels's car. She stated that at this time she had her purse, which contained, among other things, $370 in cash and a cigarette lighter. As she was attempting to pass Michaels's car, she bumped his fender.

The defendant, who was a radio repairman, employed part-time by the Wood Dale police department, and whose car was equipped with a large radio antenna, observed this accident and caused Miss Diebold and Michaels to stop. According to Miss Diebold and Michaels, the defendant showed them a policeman's star, an identification card from the Wood Dale police department (obtained by defendant a

few years earlier when he was a dog catcher serving under appointment by the chief of police), and informed them that he was a police officer. The defendant, they testified, informed Michaels that he could leave but told Miss Diebold that she was under arrest and would have to come with him. While the defendant was talking to the prosecutrix, Michaels moved her car which was blocking traffic. Upon observing this, Miss Diebold began to shout and accuse Michaels of stealing her money.

Miss Diebold testified that the above accident occurred at 5:30 P.M. and that shortly thereafter, while she and the defendant were driving to the police station in his car, she began to cry because she had never been arrested before and was afraid that she would lose her job. The defendant, she claimed, then stated that he would take her to her employer, but instead pulled down a side road, stopped and asked her if she would like to get out of the trouble. She said she would and the defendant then slid across the seat towards her and asked her to give in to him. She further testified that when she refused he began to wrestle with her, got on top of her, attempted to pry her legs apart, unbuttoned his pants and told her to "take it". When she attempted to get out of the car, he told her to "take the finger", which she did. He also attempted to put his hands down the front of her blouse, punched her twice on the face and opened the door, threw her out and drove off. The defendant, she testified, kept her purse in the car, intentionally kicking it to the floor when she tried to reach it.

She further testified that she was in the defendant's car for a total of ten to fifteen minutes and that she lay in the road a minute and then got up. A car stopped but the driver refused to help and at his suggestion she walked two blocks to a school house and called the Cook County sheriff's office. She testified that this call was made at 7:00 P.M. and she could not recall what occurred between this call and the time she had left the defendant's car, around 5:45 P.M. Deputy

sheriff Craig investigated the complaint and observed Miss Diebold at 8 :00 P.M. and noted that she was crying, her clothes were disheveled, her clothes were wet and dirty with mud, her eyes were swollen from crying, her clothing was torn on the left side, her face was swollen near the left eye, and there were various bruises on her face, left cheek and jaw. It does not appear that Miss Diebold was examined by a physician.

On November 22, 1961, Miss Diebold and Michaels went to the Wood Dale police station and observed the defendant who had been called to repair a radio. They there identified the defendant as the person who stopped them and Miss Diebold stated that the defendant was the man who robbed her. She apparently did not at this point state that the defendant attempted to rape her. The defendant stated that he had never seen them before, but a black notebook in which he had written Michaels's name and address was found in defendant's car. The defendant later admitted to deputy sheriff Lamphere that he stopped Michaels and Miss Diebold. Lamphere testified that the defendant also mentioned that he had at first arrested Miss Diebold, but had later let her go because he felt sorry for her.

The defendant at the trial admitted that he stopped Michaels and Miss Diebold and stated that he never recognized them at the police station two days later because Michaels was wearing a policeman's coat and Miss Diebold was dressed differently and her face was so bruised that she appeared differently than when he last remembered. He further testified that Michaels originally desired to have Miss Diebold arrested because she was drunk and had hit his car. Later he changed his mind but Miss Diebold then accused Michaels of taking her money. Defendant testified that he was taking Miss Diebold to the police station because she was too drunk to drive herself and because she desired to press charges against Michaels for stealing her money. However, on the way to the station she decided not to get

Michaels into trouble and asked defendant to drive her to Wheeling. He refused, stating that he was too busy with service calls and that he did not care about the accident as he was not a policeman but just a police communications officer. She then got angry and told the defendant that he had said he was a cop. She began to use profane language and finally the defendant stopped his car and when she refused to get out he kicked her out onto the ground.

Sometime between the arrest of the defendant on November 22 and the date of the trial, Miss Diebold prosecuted Michaels for the theft of her money and he then admitted taking $12 from her purse.

The defendant offered various witnesses, including a former chief of police of Wood Dale, who testified that defendant's reputation for being a peaceable and law-abiding citizen, for truth and veracity, and for morality were all good. His employers testified that on November 20, 1961, the defendant called in regarding service calls at 5:50 or 5:55 P.M. and at 6:15 P.M.

Sergeant Luellen of the Wheeling police department testified that he was in charge of the records and had brought with him, pursuant to *subpoena,* the records pertaining to the convictions of Miss Diebold. He testified that when she was previously arrested on a traffic charge, she was insulting and stated that she would get even. On motion of the prosecutor, Sergeant Luellen's testimony was stricken as was the defense counsel's question, directed to Luellen, "Are you familiar with the general reputation of Miss Ann Diebold as to morality and chastity?"

The aforesaid testimony of Miss Diebold as to what occurred inside the car, if accepted at face value, does in our opinion establish the elements of the offense charged and can hardly be classified as simply a rather vigorous attempt on the defendant's part to persuade the intended victim to have sexual intercourse as suggested by defendant. The responsibility of the defendant is not affected by the fact that after

allegedly commiting acts constituting the assault he was forced to abandon his purpose and did not in fact commit rape.

The issue to be decided is not, therefore, as defendant suggests, whether the prosecution's evidence, even if accepted, was sufficient to prove the crime charged, but rather turns upon the credibility of the only prosecution witness to the assault itself, Ann Diebold, and the weight to be given to her testimony.

In a prosecution for the crime of assault with intent to rape the testimony of the prosecutrix alone, if clear and convincing or if substantially corroborated by some other fact, evidence or circumstance, is sufficient to convict. (*People v. Garafola,* 369 Ill. 232.) And the credibility of witnesses is ordinarily a matter exclusively for the jury to determine. (*People v. Emerling,* 341 Ill. 424.) However, this rule does not preclude a reviewing court from in all instances considering the question of credibility of witnesses, particularly where a sex crime is involved where it is relatively easy to accuse even reputable persons and sometimes difficult to become disentangled from so heinous an imputation. Therefore, where, as here, the testimony of the prosecutrix alone is relied upon for a conviction, that testimony must be clear and convincing, and if it has been impeached, is inherently improbable, or is such that reasonable minds could not believe it, the conviction must be reversed. *People v. O'Connor,* 412 Ill. 304.

Miss Diebold testified initially that the defendant placed her under arrest because of her action leading to the accident. However, she also admitted that when they were originally stopped by the defendant, she accused Michaels of taking money out of her purse. This would seem to confirm the defendant's explanation that he was taking her to the police station so that she could report the alleged robbery. Also significant is the fact that she later prosecuted Michaels for this robbery, even though she also had already accused

the defendant of taking the money. She attempted to explain this at the trial by stating that she actually had money in two separate compartments of her purse and that Michaels merely took the money from one compartment. Apparently, the jury did not believe this explanation for they acquitted the defendant of taking the purse and cigarette lighter, even though Miss Diebold testified positively that the defendant kept her purse and that a lighter taken from the defendant on November 22 at the police station looked like hers. Having found that Miss Diebold was not telling the truth as to what occurred in the car with respect to the robbery, the only crime mentioned by her when she first confronted the defendant at the police station, we do not see how the jury could reasonably have accepted her uncorroborated version of what occurred regarding the alleged assault. Particularly is this true when it is noted that Miss Diebold's written and signed statement given to the deputy sheriff after the alleged assault omits entirely any reference to the defendant's having gotten on top of her, stating to her to "take it" or attempting to pry her legs apart, the facts that alone distinguish her testimony concerning the defendant's conduct from mere attempts on his part to pursuade her to have intercourse with him. Nor does the fact that at 8:00 P.M. almost 2½ hours after she left the defendant, she appeared to be bruised about the head and face necessarily corroborate her version of what occurred inside the car, for both the defendant and Miss Diebold testified that he kicked her out of the car, which fact would equally account for these bruises. Moreover, despite the fact that she testified as to a vicious attack during which her alleged attacker hit her head twice, attempted to put his hands down her dress and was on top of her apparently ready to consummate the rape, and who ultimately did succeed in forcing his finger into her, there was no evidence in the record of any medical examination or treatment of the complainant.

Tending to substantiate the defendant's version of what

occurred is the fact that, although the alleged incident occurred on a dirt road on a rainy night, officer Lamphere who investigated the scene did not find any tire tracks. Under the circumstances of this case, the testimony given by Miss Diebold concerning the alleged assault was not in our opinion clear and convincing, nor was it substantially corroborated or sufficiently credible so that a conviction based thereon can be upheld. Under this view it is not necessary to consider the defendant's other contentions.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*