[Crim. No. 9854.   Second Dist., Div. Two.   Feb. 10, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID BRUCE PECKHAM, Defendant and Appellant.

Paul Gergen and William A. Woodyard for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was convicted, in a nonjury trial, of violating Penal Code, section 220: assault with intent to commit rape.

The alleged assault occurred on September 14, 1963, while the victim, an elementary school teacher, was alone in her classroom, preparing for the new semester. No one else was present on the school grounds at the time.

At approximately 1 p.m., appellant drove his car onto the school grounds and parked outside the room where the victim was working. At the sound of the car, the victim opened the door and when she asked appellant what he wanted, appellant answered that he had come to deliver a table but that he had arrived ahead of the appointed time. The victim then asked appellant if he would remove a key that was stuck in an outside cabinet. Appellant complied with this request and after removing the key, returned to his car and drove away.

Five minutes later appellant returned to the school grounds and entered the victim's classroom through a back door. When asked by the victim what he was doing there, he replied, "The truth is I want you." Appellant then went over to the victim and began hugging her and backing her against a closet door. This continued for 10 to 15 minutes. The victim testified that during this period appellant said, "Just—just hug me and I will be all right," and I said 'You don't want to do this.' I said, 'Let's talk about this.' And he said, 'What are you trying to do, use psychology on me?', and I said, 'No.' "

Appellant continued to keep a tight grip on the victim but she persuaded him to sit down for a while, at which time appellant said, "Can you imagine? I came here to rape you

in broad daylight in this room." Following this, the victim told appellant that she had better be leaving and went to get her purse lying on a nearby table. However, appellant stood up and blocked her way, shaking his head "no", he again backed her against the cupboard door. What happened next is best described in the words of the victim.

"Q. And then what happened when he backed you up against the cupboard door? A. Well, then he proceeded to pump and go inside my pants. Q. Well, how did he go inside your pants? A. Underneath my dress.

"      .      .      .      .      .      .      .      .      .      .

"Q. Then what happened when he was doing this, if anything? A. I told him not to do it, and he just continued— he said he wouldn't injure me—he said he wouldn't harm me. Q. Were you afraid at this time? A. Yes. I was trying to think my way out of the situation. I was trying to look in my cupboard to see if I could hit him with anything but there was nothing there, and I told him that he didn't want to do this and to stop doing it, and I wanted to pull my pants up, and he said, 'No.'

"      .      .      .      .      .      .      .      .      .      .

"Q. Then what happened? * * * A. Well, I interrupted him to try to get out of the situation, and he said he was almost there, and then—Q. Well, how did you interrupt him? A. I said, 'Let's—I said, 'Stop. Let's stop this.' And his grip was still very tight, and—Q. How was he grabbing you? At what part of your body? A. The upper part of my body around my shoulders and arms.

"      .      .      .      .      .      .      .      .      .      .

"His hands were on my buttocks pressing me to his body.

"      .      .      .      .      .      .      .      .      .      .

"A. I said to him, 'You said you wouldn't do this to me,' and he motioned to the table. . . . [A.] low primary table. And I said, 'Can I pull my pants up?', and he said, 'No,' and he took me by the arm and forcibly put me on the table, and then he got on top of me and his—he was very heavy, and I started to cough." . . .

However, appellant removed himself from the victim when she told him he was too heavy and when she suggested that they move to some sitting mats at the front of the room. As appellant moved away from the victim, she ran from the room, and sought safety in a nearby house.

The victim testified that prior to being placed on the table the victim asked appellant if he needed any assistance. She

testified that she felt that if he could reach a climax and then relax and loosen his grip on her, she would be able to get out of there with the least amount of harm to herself.

The facts as heretofore narrated were substantially confirmed by appellant in both a taped interview with the police, the transcription of which was read into the record, and in his testimony from the stand. Appellant also testified that although he returned to the schoolroom the second time because he was sexually attracted to the victim and wanted to have sexual intercourse if the situation arose, that he did not threaten her or threaten to hit her or tell her he was going to rape her; and that the victim did not offer any protest to his advances or attempt to fight him off. In addition, appellant sought to establish that the previous day his wife had told him she was going to divorce him and that as a consequence of this, he had been drinking steadily until the time he drove onto the school grounds, and therefore he did not clearly remember what happened; and that when drunk he was impotent.

The questions raised are 1) sufficiency of the evidence to sustain the judgment and 2) the propriety of admitting the tape recording and/or a transcript thereof since appellant had no counsel when he was interrogated and was not informed of his rights.

█ The crime of assault with intent to commit rape is established when the prosecution proves that the defendant intended to have sexual intercourse with his victim and to use force to overcome her resistance. (*People* v. *Padilla,* 210 Cal.App.2d 541, 543 [26 Cal.Rptr. 765].) Appellant contends that the evidence is insufficient to establish (a) resistance by the victim; (b) the specific intent to commit rape; and (c) his use of force and violence.

This contention in each of its aspects is untenable. █ "It is a well-established rule that there must be some showing of resistance on the part of the prosecutrix . . .; however, the old rule calling for the victim to resist to her utmost has been considerably relaxed, that is: 'The extent to which she must resist his [the rapist's] advances is for the victim only to determine. She is required to go no further than is necessary to make manifest her unwillingness to yield to the attack. [Citations.] █ █ The crime is accomplished if at any moment during the struggle the accused intends to use such force as may be necessary to gratify his lustful concupiscence against the will of his victim. [Citation.] The importance of

the woman's resistance to the rapist inheres in (1) his intent to use force and (2) her nonconsent; but the crime does not hinge upon the woman's "utmost exertion." ' " (*People* v. *Newlan,* 173 Cal.App.2d 579, 581 [343 P.2d 618]; *People* v. *Stewart,* 109 Cal.App.2d 334, 343 [240 P.2d 704]; *People* v. *Cline,* 117 Cal.App. 181, 184 [3 P.2d 575].) ■ When the victim determines that her opposition has been carried to the point where further opposition would imperil her life or safety the trial court must then determine only whether her fears were reasonably grounded. (*People* v. *Harris,* 108 Cal.App.2d 84, 89 [238 P.2d 158].) ■ Likewise, the "force" requisite to sustain the conviction does not mean bodily harm but the physical power required in the circumstances to overcome her resistance. (*People* v. *Frye,* 117 Cal.App.2d 101, 105-106 [255 P.2d 105]; *People* v. *Harris, supra,* 108 Cal.App.2d 84, 89.)

■ The evidence detailed above was sufficient to allow the court to find both resistance by the victim and the use of force by appellant. (*People* v. *Perkins,* 80 Cal.App.2d 68, 69 [180 P.2d 920]; *People* v. *Norrington,* 55 Cal.App. 103, 109 [202 P. 932].) ■ We cannot say as a matter of law that the victim consented to the alleged acts. The mere fact that alternative inferences could be drawn from the victim's conduct, does not change a question of fact into one of law. Nor, need we in this case look to the victim's resistance or force employed by appellant to overcome such resistance in order to establish the element of specific intent to commit rape although we think the circumstantial evidence in this case sufficient. ■ Appellant's statement that he wanted the victim and that he had come to rape her in broad daylight were sufficient to establish his intent to rape.

■ The fact that appellant may have been intoxicated at the time of the assault and that when intoxicated he was impotent, are not in and of themselves defenses to the crime of assault with intent to commit rape (Pen. Code, § 22; 26 A.L.R. 772, 776, cases cited therein) although each of these factors may be considered in determining whether the defendant had the requisite intent. (*People* v. *Meichtry,* 37 Cal.2d 385 [231 P.2d 847]; Pen. Code, § 22.) ■ However, the evidence in the case at bench clearly justified the trier of fact's conclusion that these factors did not overcome appellant's expressed statements and manifested acts.

■ Notwithstanding the sufficiency of the evidence, the verdict must be reversed on another ground. The admission of the police transcript of the interrogation and included

admissions of appellant made during that interrogation clearly come within the long shadow cast by *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

The record is silent on the question of whether appellant asked for counsel at the time of his arrest or if he was advised of his constitutional rights. However, at the time of the interrogation, clearly intended to elicit incriminating statements, appellant was in custody and had passed the line between mere suspect and "the accused". *Dorado* holds that the failure of the record to show that appellant requested counsel or that the police advised him of his right to remain silent, negates the conclusion that appellant waived his constitutional rights. (*People* v. *Dorado, supra.*)

The appeals from the order denying a motion for new trial and all other orders are dismissed. The judgment is reversed.

Herndon, J., and Fleming, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 6, 1965. Burke, J., was of the opinion that the petition should be granted.