327 So.2d 745

**Robert ARD**

v.

**STATE.**

**4 Div. 372.**

Court of Criminal Appeals of Alabama.

Feb. 17, 1976.

J. Ronald Storey, Dothan, for appellant.

William J. Baxley, Atty. Gen., and Donald M. Phillips, Asst. Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

Appellant was found guilty of carnal knowledge of a girl under the age of twelve years, and his punishment was fixed by the jury at imprisonment in the penitentiary for thirty years. Defendant was approximately twenty-four years of age at the time of the alleged offense and the girl was nine.

There was positive identification of defendant by the girl. They lived in the same neighborhood. He lived with his father and mother. She said that after getting home from school about 4:00 and after having gone to play at some friends' house and was returning home, defendant came out in the road near the garage of defendant's father and "grabbed me and took me into the garage and laid me on the side . . . and he pulled down my pants and put his you-know-what in it . . ." She said she screamed, that defendant's mother came out of her house and defendant let her go, and she ran home. She testified defendant hurt her and when asked where he hurt her, she pointed to between her legs and said that he hurt her down between her legs. She said defendant held her down (indicating) and had his knees on the ground, that he "put his you-know-what in my thing, down between my legs."

According to a stipulation agreed upon between the parties, the girl's older sister would have testified if she had been present that the girl had come home crying, her face was red, her hair was messed up and her clothes were kind of ruffled. The older sister then called the police and called their mother. Their mother, who was at work at the time, testified that she came home immediately and found that the girl was "in a state of hysterics, she was crying so" and that the "button was off of her jeans, her jeans were unzipped, the bottom three buttons on her blouse were unbuttoned." She said there was hair on the girl's zipper and on the buttons of her blouse.

A police officer testified that upon receiving the call from the girl's sister he and another officer went to the girl's home where he found her "very upset, crying, vomiting, trying to vomit, and the button on the front of her pants had been torn off and her pants were open."

Two young girls in the neighborhood testified that they saw the girl running toward her home crying. One said she saw a man with "long hair and different colored pants' on" running from the garage. The other said she saw the girl and "heard her scream when she came out of the garage."

There was testimony by one of the officers that when they arrived at the Ard home, they noted that defendant was sitting down at the table but ran therefrom to another part of the house, that defendant's mother came to the door and stated that he was not at home, but upon their insistence that he was there, he came forth and was arrested.

Defendant stoutly denied his guilt from the time of his arrest and throughout the trial of the case, taking the stand, stating that he was away from the house and the neighborhood for two or three hours in the early part of the afternoon, but was there playing volleyball in the yard a great part of the time. He was substantially corroborated by his father, his mother, two brothers, a sister, a sister-in-law, a brother-in-law and an unrelated neighbor. There was testimony by most of them to the effect that the charge against him was inconsistent with their observation of and contacts with him during the afternoon. Some of their testimony indicated that the girl could have been sexually molested by a couple of fifteen or sixteen-year-old boys with whom she was playing near the garage. There was also some evidence of her having been "messing" around in the garage on occasions before the afternoon of the alleged crime and that defendant's father had run her and others out of the garage.

■ Appellant takes the position that there was not sufficient evidence of the offense of carnal knowledge of a girl under twelve or of the statutory equivalent of the abuse of "such girl in the attempt to have carnal knowledge of her." Code of Alabama, Title 14, Section 398. Convictions have been allowed to stand for no more than the evidence shows took place in this case. Any injury to the private parts of a girl is an abuse to which the statute refers. The mere hurting of the private parts of the girl, even though they are not bruised, cut, lacerated or torn, is sufficient. *Castleberry v. State,* 135 Ala. 24, 33 So. 431; *Dawkins v. State,* 58 Ala. 376; *Huggins v. State,* 41 Ala.App. 548, 142 So.2d 915, cert. denied, 273 Ala. 708, 142 So.2d 918.

■ Although terms could have been used to have shown with greater certainty that there was penetration or abuse of the private parts, we cannot accept the apparent thesis of appellant that the reference of the girl to a point between her legs can be reasonably reconciled with the penetration or abuse of the anus. In the first place, the term "between my legs" as used by the girl is not an expression in ordinarily referring to the part of the body suggested by appellant. Furthermore, the expression "between her legs" is also that of the court reporter in reporting the place to which the girl pointed when she was on the witness stand. The court charged the jury as to the necessity that there be penetration or physical abuse of "the genital organs or the sexual organs." The jury saw the girl pointing. We see no possibility, certainly no probability, of any mistake on the part of the jury or the trial judge as to this particular question.

A much sounder argument is to be found in appellant's brief to the effect that there is strong evidence of defendant's innocence, that is, that if anyone sexually abused the girl, he was not the one that did so. This is another case of a meeting of irreconcilables. The case for the defense was strong. On the other hand, it is difficult to believe that this nine-year-old girl did not truthfully identify the defendant. It is when some witnesses have steadfastly testified one way and others the other, some false and some true, and when the difference in their testimony cannot be reasonably reconciled, that a jury is in a better position than anyone else to determine which witnesses have spoken the truth and which have testified falsely and base their verdict upon the true testimony. The case was tried without any apparent attempt to obtain a verdict on the basis of either sympathy or prejudice. As much as the record of the testimony of defendant and members of his family might appeal to us as truthful, we cannot say that the verdict of the jury who looked the witnesses in the eye was clearly wrong and unjust or that the trial judge was not justified in overruling defendant's motion for a new trial.

We find no error in the record prejudicial to appellant. The judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Honorable LEIGH M. CLARK, Supernumerary Circuit Judge, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Affirmed.

CATES, P. J., and HARRIS and De-CARLO, JJ., concur.