Joe DORADOR, Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 4804.

Supreme Court of Wyoming.

Jan. 11, 1978.

Martin P. Miller, Littleton, Colo., and Edwin H. Whitehead, Cheyenne, signed the briefs and appeared in oral argument on behalf of appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Allen C. Johnson, Law Clerk, signed the briefs and Allen C. Johnson appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

Appellant-defendant was found guilty by a jury in district court on three counts of delivery of heroin, a controlled substance, in violation of § 35–347.31(a)(i), W.S.1957, 1975 Cum.Supp., and sentenced to a penitentiary term of not less than five (5) years nor more than nine (9) years on each count, the sentences to run concurrently. On appeal, defendant raises two issues, neither of which requires any detailed recitation of facts:

1. Whether the use of voter registration lists as the sole basis for the master jury wheel in district court is in violation of the Fifth and Sixth Amendments to the United States Constitution;

2. Whether the trial court erred in refusing defendant's offered instruction on specific intent.

We shall affirm.

Defendant's first issue actually consists of two assertions: (1) the use of voter registration lists as the sole basis for the district court master jury wheel is constitutionally infirm; (2) the trial court's alleged failure to give defendant an adequate opportunity to research and present this assertion before trial. As to both contentions, we find no error. We shall explain our holding as to (1) and (2) in reverse order.

On January 5, 1977, the district court scheduled trial for February 7, 1977. On February 4, 1977, defendant filed his motions, supported by brief, challenging the registered voter master jury wheel system and requesting discovery with respect thereto. On the same day, the trial judge reset trial for February 8th. Finally, on February 7th, a notice of hearing, signed by defendant's counsel for defendant's motions, was filed and a hearing thereon scheduled for 4:00 p.m. that same day. Although defendant's Colorado counsel could not make the scheduled motions hearing, his local counsel was afforded an opportunity to pursue the requested discovery but declined, even though the county clerk and clerk of court were made available for that purpose.

Immediately prior to commencement of trial, and after some argument, defendant's motions were denied. In so doing, the trial judge pointed out that under the Rules of the First Judicial District, all motions must be accompanied by a notice of hearing, the date and place being set by the court, before they are filed, yet the defendant had failed to so comply. His notice of hearing

was filed three days after the motion but yet the court, within 30 minutes, set it for hearing later that same day when called to his attention. Further, the judge noted that the sitting jury panel had been in existence in part since October and in full since December, 1976, and that defendant's local counsel had the opportunity ever since to examine into it and make unlimited discovery. With those explanations, we can perceive no basis for finding trial court error. Any lack of opportunity for discovery suffered by defendant was not the result of prosecution or court action, but simply the result of his own lack of diligence. Further, defendant's motion for discovery lacked any specificity.[1] It merely asked for an opportunity to make discovery of facts which had been available ever since the defendant's arraignment on December 10, 1976, at which time he was represented by counsel. The voter registration lists had been available in both the office of the county clerk and the office of clerk of court pursuant to §§ 1–85 and 18–142.1, W.S. 1957, 1975 Cum.Supp.[2] since January, 1976. The clerk of court and county clerk were made available for examination on the date set by defendant's counsel, but local counsel refused to examine them, apparently because out-of-state counsel could not be present.

While § 33–49, W.S.1957, provides that out-of-state counsel may be admitted for the purposes of a particular case, such nonresident practitioner must have associated with him an active member of the Wyoming State Bar. Rule 19 of the Rules of this court For the Government of Attorneys at Law. The function of local counsel is something more than a matter of form or protocol; it is not intended that he be only a figurehead. It is expected that he take an active part in the representation of the client concerned and be available to share responsibility as well as actively participate in the case at hand, in the absence of out-of-state counsel. Within the foregoing facts, we can find no prejudicial error.

Finally, we have some difficulty associating the motion with the type discovery contemplated by Rule 18, W.R.Cr.P., requiring the prosecution to disgorge available information but if so construed, such a motion must be made within 10 days after arraignment or at a later "reasonable time." Rule 18(g), W.R.Cr.P. Waiting until the last moments before trial was unreasonable. It would appear that the motion was more in the nature of one for a continuance. If it was the latter, it rested within the discretion of the trial judge to grant or deny in

---

1. Defendant's motion for discovery was as follows:

"COMES NOW the defendant by his attorneys, MARTIN P. MILLER & EDWIN H. WHITEHEAD, and moves the Court for an Order to examine and discover the manner and method of selection of petit jurors for the County of Laramie, sitting in the District Courts. It is essential that the defendant in order to establish the constitutionality of the method for selection of jurors by affording an opportunity to take the testimony of the appropriate court and county officials, and to examine the applications [sic] and responses * of persons being selected for jury duty.

* We presume the reference is to juror questionnaires and responses available in the office of the clerk of court for examination at any time.

"WHEREFORE, defendant respectfully prays that he be given an opportunity for such discovery as set forth above."

2. Section 1–85(a) provides in pertinent part: "The list of persons qualified to serve as trial jurors, certified and delivered to the clerk of

the district court in accordance with W.S. 18–142.1 shall constitute the jury list for the district court, the county court, and justice of the peace courts for the remainder of the calendar year. * * * "

Section 18–142.1 provides:

"County clerks and their deputies shall compile a list of all persons whose names appear on the official register of voters and who appear to have the qualifications to serve as trial jurors. The list shall state the names and address of each person, be made in triplicate, and be certified by the county clerk. Two copies of the list shall be delivered to the clerk of the district court of the county by the county clerk on or before the second Monday of January of each year, and one copy shall be filed by the county clerk as a permanent record. The lists certified to the clerk of court may be in such form as to enable the names to be separated into suitable ballots for use by the clerk as provided by law."

the absence of an abuse of discretion. *Sims v. State*, Wyo.1975, 530 P.2d 1176. Under the circumstances related, we hold there was no abuse of discretion.

■ In support of his assertion that because of its underlying basis the district court jury wheel is constitutionally infirm, defendant cites numerous statistical and sociological studies which indicate that particular identifiable ethnic groups are under-represented on voter lists, hence on jury lists, and, therefore, a jury selected on this basis cannot stand constitutional muster under the United States Constitution, Fifth and Sixth Amendments. Such a posture is not new to this court. *Boyd v. State*, Wyo. 1974, 528 P.2d 287, cert. den. 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102; *Simms v. State*, Wyo.1972, 492 P.2d 516, cert. den. 409 U.S. 886, 93 S.Ct. 104, 34 L.Ed.2d 142; *Lofton v. State*, Wyo.1971, 489 P.2d 1169, cert. den. 406 U.S. 949, 92 S.Ct. 2049, 32 L.Ed.2d 337. In *Boyd,* supra, the most recent discussion on the subject, it was once again reiterated that a defendant asserting such a challenge must show systematic and intentional exclusion of an ethnic group:

" * * * We again call attention to *Fay v. New York*, 332 U.S. 261, 284, 67 S.Ct. 1613, 1626, 91 L.Ed. 2043 (as we did in *Lofton,* 489 P.2d at 1171–1172), where it was said, 'It is fundamental in questioning the composition of a jury that a mere showing that a class was not represented in a particular jury is not enough; there must be a clear showing that its absence was caused by discrimination * * *.'" We adhere to our view expressed in *Simms v. State*, supra, 492 P.2d at 520 (n. 2), where we indicated that the simplest method by which any defendant could challenge a jury as being selected by systematic and intentional exclusion of any group of persons would be to present the names of various persons who were entitled to be on the jury list and whose names were not contained thereon. This would impose no great burden and would permit the one claiming to be denied a fair trial a workable method for meeting the above-mentioned prerequisite of *Fay.*" 528 P.2d at 289–290.

See as well, *State v. Fitzpatrick*, Mont.1977, 569 P.2d 383; *State v. Lee*, 1976, 114 Ariz. 101, 559 P.2d 657.

Defendant has not met this burden of showing systematic and intentional exclusion of racial minorities from the lists involved here nor was there any offer to do so nor is there any meaningful showing that such evidence could be produced. Rather, what he has done is present us with a conjectural, abstract assertion of discrimination based on statistical probabilities. This, as other courts have pointed out, is not enough. As said in *United States v. Test*, 10 Cir. 1976, 550 F.2d 577, 583–584:

" * * * [D]efendants' evidence establishes nothing more or less than a very high statistical probability that the voter registration lists, of which the master and qualified jury wheels were concededly representative, contained comparatively smaller proportions of Chicanos and blacks than the general voting-age population. The mathematical conclusion that the disparity between these two figures is 'statistically significant' does not, however, require an *a priori* finding that these deviations are 'legally significant' or that the * * * jury selection plan fails to comply with either statutory or constitutional requirements."

What defendant has submitted does not fulfill the required burden of proof and therefore provides no basis for any finding that the jury selection method here is constitutionally unfair.

■ Defendant's second issue on appeal alleges error on the part of the trial court in that it refused his offered instruction concerning specific intent. It is defendant's assertion that in order to sustain a conviction for the crime with which he was charged, delivery of a controlled substance, the element of specific intent must be proved and the jury instructed upon the same. Still, the record is barren of any objection by defendant to the trial court's refusal of his instruction; hence, as we have repeatedly held, *Montez v. State*, Wyo. 1977, 573 P.2d 34, the issue may be con-

sidered only if there is fundamental or plain error. Rule 31, W.R.Cr.P.; Rule 51, W.R.C.P.; *Horn v. State*, Wyo.1976, 554 P.2d 1141; *Hays v. State*, Wyo.1974, 522 P.2d 1004. There was neither here.

The defendant's unique position avers that since there must be possession with specific intent to deliver before there can be delivery of a controlled substance, that element is also necessarily included amongst all elements necessary to establish the crime of delivery of a controlled substance. The discussion in *Stuebgen v. State*, Wyo. 1976, 548 P.2d 870, makes it abundantly clear that when only the crime of possession with intent to deliver a controlled substance is charged, and there is no physically completed delivery, the offense is a specific intent crime. Once a delivery takes place and the crime of delivery is charged, then the offense takes on the characteristics of a general intent crime and an instruction on specific intent is not necessary; the inference thereupon arises that the defendant intended that which resulted.

Realizing that the distinction between a specific intent crime and a general intent crime is apparently troublesome, we can perhaps clarify it by stating it in a somewhat different way. When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant intended to do the outlawed act. Such intention is general intent. When the statutory definition of the crime refers to an intent to do some further act or attain some additional consequence, the offense is considered to be a specific intent crime and then that question must be asked of the jury. Section 35–347.- 31(a) is most illustrative of both those postulates when it defines the crime charged here and the one not here charged. Its language is simple: "(a) Except as authorized by this act [§§ 35–347.1 to 35–347.55], it is unlawful for any person to manufacture, deliver, *or* possess with intent to manufacture or deliver, a controlled substance." (Emphasis added.) "[I]t is unlawful * *

to * * * deliver, * * * " defines a general intent crime. "[I]t is unlawful * * to * * * possess with intent to * * deliver, * * * " defines a specific intent crime. The trial judge presented the right question to the jury, when he advised it that the burden is on the prosecution to establish, beyond a reasonable doubt, that the defendant "intentionally committed the act." If the intent was to do the future act of delivery, not done, then the trial judge would be required to instruct as to specific intent.

From the sense of defendant's brief and oral argument, the defendant appears to misconceive knowledge by the defendant that he is delivering a controlled substance as specific intent. Knowledge or scienter is essential to a general intent crime. An accused must, of course, know that he is delivering a controlled substance. All of the surrounding circumstances here point to the defendant's knowledge that he was, on three different occasions, delivering a controlled substance and there was no innocence or ignorance of the unlawfulness of the act on his part. We cannot see that defendant's knowledge of the nature of the drug he was selling was ever an issue. The inference is compelling that defendant knew what he was selling.

Under the charges upon which defendant was tried, knowledge of the unlawful character of his acts, including knowledge of the type controlled substance he was delivering, was necessary, was proven and such requirement was included as a part of general intent in the court's instructions. See *People v. Daniels*, 1975, 14 Cal.3d 857, 122 Cal. Rptr. 872, 537 P.2d 1232; *Rowe v. State*, 1975, 91 Nev. 772, 542 P.2d 1059; *Thomas v. State*, Alaska 1974, 522 P.2d 528; *State v. Hernandez*, 1964, 96 Ariz. 28, 391 P.2d 586.

There was no plain or fundamental error.

Affirmed.