Bruce BRYAN, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 86–300.

Supreme Court of Wyoming.

Nov. 24, 1987.

---

and

Leonard Munker, State Public Defender, Julie D. Naylor, Appellate Counsel, Cheyenne, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, and Jane H. Juve (argued), Student Intern, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen and Mary B. Guthrie, Sr. Asst. Attys. Gen., and Michelle R. Whetsel (argued), Student Intern, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Appellant, Bruce Bryan, pled guilty to a charge of first-degree sexual assault as a result of a plea bargain in which a second charge of child abuse was dismissed. This is an appeal from the judgment and sentence entered upon the guilty plea.

The issues presented for our determination, as stated by appellant are:

"I. Whether appellant's guilty plea should be set aside because it was without sufficient factual basis as a matter of law, as required by Rule 15(f), W.R.Cr.P.

"II. Whether appellant's guilty plea should be set aside because appellant was not adequately notified regarding the true nature of the charge against him, as required by Rule 15(c)(1), W.R. Cr.P., and the United States Constitution, Amendment XIV."

The essence of appellant's claim of error is that first-degree sexual assault requires that sexual intrusion be for the purpose of sexual arousal, gratification or abuse and is a specific intent crime; that the court, under Rule 15, W.R.Cr.P., must, therefore, inform appellant of the specific intent necessary for conviction before accepting his guilty plea.

We affirm.

## FACTS

Twenty-one-year-old appellant, Bruce Bryan, a dishwasher, had lived with a 23–year–old Casper woman and her ten-month-old infant girl for eight and one-half months. On December 5, 1985, appellant was babysitting. The child began to cry. Appellant placed her on a blanket and gave her toys. The crying continued. Frustrated, appellant tried to feed the baby. As the baby continued to cry, appellant became more and more angry. Enraged, he picked up the baby, shaking her hard, and yelling as he carried her to her bedroom. He dropped the baby onto the bed and threw some blankets on her. Appellant brought a radio from the living room and turned it on so the baby "wouldn't feel alone & would go back to sleep." He acknowledged that his fingers had been in or near the baby's vagina and anus.

Among the materials before the court were appellant's statements, doctor reports, psychological evaluations, presentence investigation, and the investigating officer's report. These materials reveal that appellant was enraged and lost control; that "his only purpose was to stop the child's incessant crying and to vent his resultant anger and frustration"; that he was "pissed off"; and he stated: "I grabbed her up" and "gripped her real hard" and shook her "in a brutal manner." Appellant admitted he "got high" on marijuana twice on the morning of the incident and "lost his temper" when the baby became fussy. He cited a history of losing his temper and admitted aggression toward others when intoxicated with drugs or alcohol.

Appellant left the house, locking the front door, and went to work. The mother returned after 25–45 minutes to find appellant gone and the house locked. She crawled through a window and found the crying baby sitting in a pool of blood holding a bloody diaper. The hospital emergency room reported cuts and blood in the vaginal and anal area and possible sexual assault. Surgery was required to repair a torn sphincter muscle and torn hymenal ring.

Appellant Bruce Bryan was charged with one count each of felony child abuse and first-degree sexual assault. Mental examination determined appellant had no mental illness or deficiency and was not a sexual deviate. He had a low tolerance for stress, however, and was easily frustrated. The child abuse charge was dropped, and appellant pled guilty to first-degree sexual assault and was sentenced to a 20–25 year term.

Before accepting a plea of guilty, the court must determine that defendant, as provided in Rule 15(c)(1) and (d), W.R.Cr.P., understands:

(c)(1) "The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

\*  \*  \*  \*  \*  \*

"(d) The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary \* \* \*."

With respect to entry of judgment, Rule 15(f), W.R.Cr.P., provides:

"Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

█ It is essential that defendant be informed of the nature of the charge against him. That is often accomplished by reading the indictment and, if necessary, explaining the elements of the crime charged. See *York v. State*, Wyo., 619 P.2d 391, n. 3 (1980). Thus, it is stated

"The requirement that the court determine that defendant understand 'the nature of the charge' has been in the rule from the beginning. Its obvious purpose is 'to assure that the accused be not misled as to the nature of the offense with which he stands charged.' There is no simple or mechanical rule as to how the court is to determine defendant's understanding of the charge. Some defendants are more sophisticated than oth-

ers and some charges are more difficult to understand than others." (Footnotes omitted.) 1 Wright, Federal Practice and Procedure: Criminal 2d § 173 at 587–88 (1982).

The first-degree sexual assault statute under which appellant was charged provides:

"(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

\* \* \* \* \* \*

"(iii) The victim is physically helpless, and the actor knows or reasonably should know [that] the victim is physically helpless and [that] the victim has not consented." Section 6–2–302(a)(iii), W.S. 1977.

At the plea hearing in this case, the information was read to appellant; and the trial court asked if he knew that the elements of the offense were that "first, the offense occurred on or about the 5th of December, 1985, in Natrona County, Wyoming, second, that you did unlawfully inflict sexual intrusion upon a victim, third, that at the time the victim was physically helpless, fourth, that you knew or should have known that the victim was helpless and had not consented?" The question contains all of the elements of the crime charged as set out in the information. The appellant responded, "Yes, Your Honor." The trial judge then asked him if he had committed the act charged, framing the question in the same language as the information. The appellant again answered yes.

Appellant contends that the court did not sufficiently inform him of the elements of the crime that the State must prove and that he should also have been informed that first-degree sexual assault was a specific intent crime, requiring that the intrusion be with a criminal intent to sexually arouse, gratify or abuse. He denies that he intended to sexually hurt the baby or that criminal intent or purpose existed. Appellant claims that first-degree sexual assault cannot occur if a sexual purpose is absent.

Appellant admitted that he committed sexual intrusion on a helpless victim. The only question remaining is whether the court, under Rule 15, supra, must inform appellant of the definition of sexual intrusion under § 6–2–301(a)(vii)(A), W.S.1977:

"(A) *Any intrusion*, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion *can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse.*" (Emphasis added.)

Appellant claims that sexual gratification is an element of the crime of first-degree sexual assault, in that the perpetrator must have intended to be sexually gratified. Sexual assault statutes are intended to punish the actor because he has violated the person of the victim, not because he has become aroused or gratified or attempted to satisfy his sexual desires. *Hamill v. State*, Wyo., 602 P.2d 1212 (1979). Section 6–2–301, supra, provides that the intrusion be "for the purposes of sexual arousal, gratification *or abuse*." (Emphasis added.) In this case, we obviously are talking about sexual abuse. The first-degree sexual assault statute does not require that appellant intend that his assault be for sexual abuse but instead that the facts and circumstances surrounding the incident can be *reasonably construed* as being for the purpose of sexual abuse. If the facts and circumstances of the offense presented at the plea hearing can reasonably be construed to be for sexual abuse, that is sufficient although the actor's subjective intent may, according to his statement, have been something else.

In *Watt v. State*, 222 Ark. 483, 261 S.W.2d 544 (1953), the court held that insertion of a man's finger into the vagina of a 7–year–old girl constituted sexual abuse. *Lee v. State*, 246 Ala. 69, 18 So.2d 706 (1944), defines sexual abuse as injury to the sex organs of a female. *Ard v. State*, 57 Ala.App. 250, 327 So.2d 745 (1976), goes further, saying that any injury to the private parts of a girl is abuse—even without evidence of bruising, cuts or lacerations. In *Matter of Adoption of RHA*, Wyo., 702 P.2d 1259 (1985), this court held that incest

with a 12–year–old girl was abuse. In that case, sexual intercourse occurred but there were no physical injuries. If intercourse with a 12–year old is abuse, surely physical damage to the genitals of a ten-month-old child could reasonably be construed as sexual abuse. The trial court could reasonably have concluded upon the facts of this case that in venting his anger and frustration upon this helpless child so as to injure and tear her vaginal and anal openings, appellant's purpose was sexual abuse.

■ First-degree sexual assault is a general intent crime. In determining whether a factual basis exists for a guilty plea to a general intent crime, the court must only find that the act was done voluntarily. " '[T]he inference thereupon arises that the defendant intended that which resulted.' " *Slaughter v. State*, Wyo., 629 P.2d 481, 483–484 (1981), quoting *Dorador v. State*, Wyo., 573 P.2d 839, 843 (1978).

"[W]here the offense is malum prohibitum, intent and knowledge are not elements of the crime, unless expressly made so, and all that is required for the commission of the crime is the intentional doing of the prohibited act itself, regardless of whether the doer intended to commit the crime resulting from the intentional act." (Footnotes omitted.) 22 C.J. S. Criminal Law, § 30, p. 105.

In *Armijo v. State*, Wyo., 678 P.2d 864 (1984), the appellant admitted that he voluntarily became intoxicated and caused the victim's death. The court held that the State did not have to prove that the defendant intended harm to the victim at the time he drank but only that the acts which established the offense were voluntary.

"A general intent crime requires only that the prohibited conduct be undertaken voluntarily." Id. at 869.

In *Sanchez v. State*, Wyo., 567 P.2d 270 (1977), the court held that under the previous statute, § 6–63, W.S.1957, Cum.Supp. 1975, rape was a general intent crime and " 'no intent is requisite other than that evidenced by the doing of the acts constituting the offense charged.' " Id. at 275 quoting *Rhodes v. State*, Wyo., 462 P.2d 722, 727 (1969). By contrast, the court stated that attempted rape was a specific intent crime which required proof of intent.

In 1977, the Wyoming legislature revised the rape statute to provide four degrees of sexual assault, each with different elements and different penalties. If the legislature had intended first-degree sexual assault to be a specific intent crime, it could have revised the statute to specifically so provide. Instead, the legislature omitted intent as an element, requiring only that a transgressor's acts be *reasonably construed* as for the purpose of abuse or gratification, thus leaving first-degree sexual assault as a general intent crime. We do not share the fear of the dissent that our holding in this case will subject medical practitioners to rape charges. It will not, unless of course intrusion into the genital or anal opening of another person be reasonably construed as for the purpose of sexual arousal, gratification, or abuse. Likewise we do not share the conclusion of the dissent that "reasonably be construed for the purpose of" is the same as an actor's subjective "intent" to do the act. If the legislature had meant to require that the crime of rape include a subjective intent, it could easily have said so. The dissents would legislate by changing the statute to include specific intent as an element for the crime of rape. We should not, will not, and cannot legislate that change.

In *Chavez v. State*, Wyo., 601 P.2d 166, 171 (1979), this court stated that "sexual assault offenses require general criminal intent or a mens rea." In *Seeley v. State*, Wyo., 715 P.2d 232, 239 (1986), we stated: "Sexual assault in the first-degree is a general intent crime * * *."

■ Appellant's contention that sexual assault is a specific intent crime is clearly incorrect. A court is only required to provide information concerning the elements of the crime with which appellant was charged. See *Matlack v. State*, Wyo., 695 P.2d 635 (1985). It was unnecessary for the court to inform appellant of the law regarding specific intent when specific intent was not an element of the crime.

Affirmed.

URBIGKIT, J., filed a dissenting opinion in which MACY, J., joined.

MACY, J., filed a dissenting opinion in which URBIGKIT, J., joined.

URBIGKIT, Justice, dissenting, with whom MACY, Justice, joins.

This record does not present a basis for me to differentiate intent as an element in a rape case from the statutory criteria that *can reasonably be construed as being "for the purposes of sexual arousal, gratification or abuse."* Section 6–2–301(a)(vii)(A), W.S.1977. It would appear that the legislature intended for the statute to speak to intent of the actor. Otherwise, a doctor, in proper practice of his profession, could be accused of rape even if his purpose was to save the life of his patient.

I would find a rape case of whatever character is a rape case invoking a requirement of an intent to do something for the purpose of sexual arousal, gratification or abuse. Conversely, accidental rape is an anathema in terminology, since conduct is either accidental or intentional. In result from these facts, if the injury had been an abdominal injury to the liver, it would not have been rape, while an abdominal injury in the genital or anal area, as occurred in this contended accident of wanton misconduct, is now defined as rape, consequently deleting purpose or intent from the statutory definition. The differentiation of being reasonably construed from being determinable as intended from the facts is too illusory for me to concur here.

Nothing in this record indicates an acknowledgment of guilt by defendant that he intended a sexual offense of any kind in doing anything for sexual arousal in the totally inexcusable display of temper and uncontrolled anger which only fortuitously did not achieve a homicide status.

The court recreates the sexual-assault statute to be the same as assault and battery by determining that "first degree sexual assault [can] occur if a sexual purpose is absent." This simply disregards the specific statutory criteria, "for the purposes of sexual arousal, gratification or abuse," and the prior case law that can even be capsu-lized accurately by legal encyclopedia reference.

"It has been held that the use of a weapon to compel a woman to consent to sexual intercourse is not an assault with intent to commit rape if there is no overt attempt to commit the act itself. However, a threat to shoot, in connection with other acts, may be sufficient to warrant a conviction." 65 Am.Jur.2d, Rape § 21, p. 772.

To obviate incomprehensibility, the issue in this case is whether sexual intent is required for attempted commission of a sexual offense without regard to whether the required intent may be defined as specific or general. I cannot divide intent so as to know when one is doing something one only generally intends to do, or when one perchance is doing something one really specifically intends to do, since whichever, the act is done. In rape, the punishment is for what is done to the other person, and the crime is defined in purpose in statutory language: "for the purposes of sexual arousal, gratification or abuse."

"The meaning of the word 'intent' in the criminal law has always been rather obscure, largely as a result of its use in such phrases as 'criminal intent,' 'general intent,' 'specific intent,' 'constructive intent,' and 'presumed intent.' Intent has traditionally been defined to include knowledge, and thus it is usually said that one intends certain consequences when he desires that his acts cause those consequences or knows that those consequences are substantially certain to result from his acts. The modern view, however, is that it is better to draw a distinction between intent (or purpose) on the one hand and knowledge on the other." 1 LaFave and Scott, Substantive Criminal Law § 3.5, pp. 302–303 (1986).

" * * * Much of the existing uncertainty as to the precise meaning of the word 'intent' is attributable to the fact that courts have often used such phrases as 'criminal intent,' 'general intent,' 'specific intent,' 'constructive intent,' and 'presumed intent.' 'Criminal intent,' for example, is often taken to be synonymous

with mens rea, the general notion that except for strict liability offenses some form of mental state is a prerequisite to guilt.

\* \* \* \* \* \*

" 'General intent' is often distinguished from 'specific intent,' although the distinction being drawn by the use of these two terms often varies. Sometimes 'general intent' is used in the same way as 'criminal intent' to mean the general notion of mens rea, while 'specific intent' is taken to mean the mental state required for a particular crime." LaFave and Scott, supra, § 3.5(e), pp. 313–314.

Thus, we shall see that rape, which is in itself a sexual act, involves a general-intent characterization. 3 Wharton's Criminal Law § 283 (14th ed. 1980). While both assault with intent to commit rape and attempt to commit rape invoke the specific intent of sexual arousal, gratification or abuse, this is the essence of the accomplished offense.

"Most often the question of criminal intent in rape does not arise, because it is merely assumed to be present. It is very difficult to imagine a situation in which an actual forcible rape was not accompanied by specific criminal intent. Where statutes defining rape do not specifically require a criminal intent, nevertheless, it may be assumed to be an unarticulated element of the offense." Morosco, The Prosecution and Defense of Sex Crimes § 3.01 (1987).

LaFave and Scott, in the text on Criminal Law, relate:

" \* \* \* [S]ome courts have taken the view that intent may be presumed (discussed below) only as to a general intent. It has been suggested, however, that greater clarity could be accomplished by abandoning the 'specific intent'—'general intent' terminology, and this has been done in the Model Penal Code. [Fn.47] "[Fn.47] '[W]e can see no virtue in preserving the concept of "general intent," which has been an abiding source of ambiguity and of confusion in the penal law.' Model Penal Code § 2.02, Comment (Tent. Draft No. 4, 1955)." LaFave

and Scott, Criminal Law, § 28, p. 202 (1982).

"The requirement of a particular purpose to arouse or gratify sexual desire distinguishes sexual imposition from ordinary assault and from noncriminal touching.

\* \* \* \* \* \*

"Together, the limitation on the range of conduct included in the offense and the requirement of purpose differentiate invasion of personal dignity from the casual expression of affection or approval. The basketball coach who pats his players on the bottom is merely fulfilling a ritual of congratulation. Even if such contact proves unwelcome to the recipient, the actor may not be held liable for this offense." Model Penal Code § 213.4, American Law Institute, Model Penal Code and Commentaries, Part 2, Comment at 40 (1980).

This structure that intent to commit a sexual offense is within the extrinsic nature of the crime of rape, *Gallup v. State*, Wyo., 559 P.2d 1024 (1977); *State v. Smith*, 3 Wash.2d 543, 101 P.2d 298 (1940), and that an attempt as assault becomes a category specific-intent offense, is not unrecognized in Wyoming precedent.

" \* \* \* Defendant, however, raises a further and perhaps a more serious impropriety of the challenged instruction. Following its recitation of the statute defining assault or assault and battery with intent to commit rape, it purports to state the essential elements of the crime and in so doing omits entirely the element of intent without which there could, of course, be no crime. In this respect we deem the instruction incomplete. The jury's verdict could have been properly returned only in the event they believed that had defendant consummated his intent he would have been guilty of rape. No instruction having covered the material element of intent, Instruction 7 was necessarily misleading and prejudicial to him." *Rhodes v. State*, Wyo., 462 P.2d 722, 728 (1969).

See similarly the earlier case, *State v. Parmely*, 65 Wyo. 215, 199 P.2d 112 (1948), involving proper proof of intent and assault

with intent to commit murder. In *Dean v. State*, Wyo., 668 P.2d 639 (1983), we said in differentiation that arson was not a specific-intent statute since the fire was demonstrable and the burning was voluntary, without excuse or justification, and without bona-fide claim of right. In *Armijo v. State*, Wyo., 678 P.2d 864, 868–869 (1984), an aggravated-homicide-by-vehicle case, this court stated:

"Finally we turn to the contentions of the appellant that § 31–5–1117(a), W.S. 1977 (May 1982 Cum.Supp.), is unconstitutional because it does not encompass a criminal intent in its definition of aggravated homicide by vehicle. One of the enduring principles of the common-law tradition is the concept that, in general, an injury can amount to a crime only when there is a concurrence of an evil-meaning mind with an evil-doing hand, i.e., the act must be accompanied with the unlawful intent. * * * Recognition of a different style of offense has occurred over the past century and a half. This is an offense, sometimes called one of 'strict liability,' based upon statutes which are intended to punish the conduct proscribed without requiring an unlawful intent. * * *

"* * * A general intent crime requires only that the prohibited conduct be undertaken voluntarily."

*Chavez v. State*, Wyo., 601 P.2d 166 (1979) brings these issues together in reversing a rape conviction by holding that a sexual-assault offense requires general criminal intent or mens rea, but that

"* * * the criminal intent is the factor which is critical in differentiating what otherwise are very similar events. That general intent, however, must exist in the mind of the perpetrator (the 'actor' under the Wyoming Statutes). It cannot be demonstrated by only the subjective mental set of the alleged victim. It is not possible to structure the criminal intent of the defendant out of the subjective attitudes of the alleged victim." *Id.* at 172.

These cases are consistent with the specific-intent factor of the assault-with-intent cases, *State v. Wilson*, 32 Wyo. 37, 228 P. 803 (1924), and *Sanchez v. State*, Wyo., 567 P.2d 270 (1977).

*Matter of Adoption of RHA*, Wyo., 702 P.2d 1259 (1985), involved a recognized incest as an effectuated sexual event, and likewise in *Seeley v. State*, Wyo., 715 P.2d 232 (1986), intent was not in conflict where defendant denied commission. See also *Matlack v. State*, Wyo., 695 P.2d 635 (1985), unauthorized use of a vehicle as general intent; *Saldana v. State*, Wyo., 685 P.2d 20 (1984), cert. denied 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985), obstructing police officer; *Simmons v. State*, Wyo., 674 P.2d 1294 (1984), aggravated assault; and *Slaughter v. State*, Wyo., 629 P.2d 481 (1981), escape.

I would simplistically apply the rule of *Dorador v. State*, Wyo., 573 P.2d 839 (1978), as there stated for application in a drug offense, to apply here for an assault with intent to commit a sexual offense:

"Realizing that the distinction between a specific intent crime and a general intent crime is apparently troublesome, we can perhaps clarify it by stating it in a somewhat different way. When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant intended to do the outlawed act. Such intention is general intent. When the statutory definition of the crime refers to an intent to do some further act or attain some additional consequence, the offense is considered to be a specific intent crime and then that question must be asked of the jury." Id. at 843.

" 'The crime of assault with intent to commit rape is established when the prosecution proves that the defendant intended to have sexual intercourse with his victim and to use force to overcome her resistance.' " *People v. Peckham*, 249 Cal.App.2d 941, 57 Cal.Rptr. 922, 925 (1967), quoting from *People v. Peckham*, 232 Cal.App.2d 163, 42 Cal.Rptr. 673, 675 (1965).

Intent to commit rape as a special-intent offense has a long history. *Reagan v. State*, 28 Tex.Crim. 227, 12 S.W. 601 (1889); *People v. Guillett*, 342 Mich. 1, 69 N.W.2d 140 (1955); *People v. Stagg*, 29 Ill.2d 415, 194 N.E.2d 342 (1963).

Citation by the court of *Lee v. State*, 246 Ala. 69, 18 So.2d 706 (1944); *Watt v. State*, 222 Ark. 483, 261 S.W.2d 544 (1953); and *Ard v. State*, 57 Ala.App. 250, 327 So.2d 745 (1976) is not of contrary persuasion, since in each case the sexual act was committed and consequent intent to commit a sexual act was never in issue.

I would conclude that intent to commit a sexual offense is an element of rape, and that here, lacking any pre-plea instruction or acknowledged admission of that fact by defendant, no sufficient factual basis was recorded to determine presence or lack of all essential elements of the offense charged, as required by Rules 15(f) and 15(c)(1), W.R.Cr.P. and the Fourteenth Amendment of the United States Constitution.[1] I would reverse, in order to permit the defendant to replead, either acknowledging sexual intent in fact, pleading to an offense which he admits, or facing trial on whatever criminal charge the prosecutor feels can be properly proven.

MACY, Justice, dissenting, with whom URBIGKIT, Justice, joins.

I join in the dissent of Justice Urbigkit. The majority stated in their reply to the dissent that:

"We do not share the fear of the dissent that our holding in this case will subject medical practitioners to rape charges. It will not, unless of course intrusion into the genital or anal opening of another person be reasonably construed as for the *purpose* of sexual arousal, gratification, or abuse." (Emphasis added.)

This reasoning simply acknowledges that intrusion must be accompanied by the *intent* to sexually arouse, gratify, or abuse.

"Purpose" is merely a synonym for "intent."

---

1. It is possible to understand why Bryan now recognizes that the arrangement, as a plea bargain, had little to commend negotiative acceptance. His sentence of 20 years was not sufficiently reduced from an expectable range after a jury-trial conviction. Dismissal of a child-

abuse claim which, in itself, carried a five-year maximum and was at least contendably within a double-jeopardy prohibited status, was hardly a bargain within his present argument of an admitted anger-driven, uncontrolled, aggravated-assault offense.